[No. 3768.    Decided November 17, 1900.]

THE STATE OF WASHINGTON on the Relation of T. H. Cann v. WILLIAM HICKMAN MOORE, Judge of the Superior Court of King County, State of Washington.

WRIT OF REVIEW—NOTICE—NECESSITY FOR BOND.

The fact that a writ of review has been granted by the court without requiring notice to the adverse party or the filing of a bond is not ground for quashing the writ, as the statutes permit the former practice and do not require the latter.

SAME—NECESSARY RECITALS.

The failure of a writ of review to recite the errors sought to be reviewed is not ground for quashing, since Bal. Code, § 5744, which prescribes the contents of the writ, does not require such recital.

SAME—REVIEW AFTER ORDERS CARRIED INTO EFFECT.

The fact that a mandate of the superior court requiring the officers of a political convention to certify a certain nomination, which it is sought to have reviewed, has been carried into effect, is no ground for quashing the writ of review, since, in case of a reversal of the mandate, the nomination may still be

certified to the officers whose duty it is to place it upon the official ballot.

**ELECTIONS—NOMINATIONS FOR OFFICE—ERROR IN ANNOUNCEMENT.**

Where, without any fraud or oppression, the presiding officer of a political convention announces, as the result of a ballot, that the nomination of a certain person has been made, and, though a mistake has been made in the computation of the ballots, there is no protest raised by the convention or any member thereof, until after its adjournment *sine die*, the nomination so announced must be treated by the courts as the will of the convention.

*Original Application for Writ of Review.*

*John F. Dore, S. M. Shipley* and *John E. Humphries,* for relator.

*Hastings & Stedman* and *Tucker & Hyland,* for respondent.

The opinion of the court was delivered by

WHITE, J.—This is a proceeding in the nature of certiorari, denominated by our statute a "writ of review." The facts leading up to the issuance of this are as follows: In the late county republican convention for King county, held on the 2d and 3d days of August, 1900, there were four candidates for nomination for the office of justice of the peace in the city of Seattle. The convention had the right to nominate two candidates. There were in the convention, entitled to vote, 252 delegates. In order that any candidate should be nominated, it was necessary that such candidate should have 127 votes, if all the delegates voted. Samuel H. Piles was the chairman of this convention and A. Muchmore the secretary. There were before the convention for nomination R. R. George, T. H. Cann, C. G. Austin and T. H. Calhoun. On the first ballot taken by the convention, R. R. George was declared one of the nominees. The chairman announced that no

one of the other three candidates had a majority of the votes and that, therefore, there was no nomination; and he thereupon ordered another ballot to be taken upon all of said candidates, with the exception of R. R. George. On the second ballot T. H. Cann, the relator, was declared by the chairman to have been nominated. After the convention adjourned *sine die* it was discovered that on the first ballot C. G. Austin received 131 2-3 votes and should have been declared the nominee of the convention, and that on the second ballot T. H. Cann received 125 votes, two less than was necessary to nominate. For the purpose of declaring C. G. Austin the nominee of such convention in place of T. H. Cann, proceedings for a writ of mandamus were instituted in the superior court of King county by C. G. Austin, as relator therein, against Samuel H. Piles, as chairman of said convention, and A. Muchmore, as secretary of the convention, to compel said Piles and Muchmore to certify to the secretary of the board of county commissioners of King county the name of C. G. Austin as the nominee of said convention. In this proceeding such things were had and done that an alternative writ of mandate was issued, and duly and regularly served upon the defendants mentioned; and on the return day of said writ, the officers of said convention, by their attorneys, appeared in the superior court of King county, and the said T. H. Cann appeared in said cause, by the same attorneys, and filed a demurrer to said alternative writ of mandate, which was argued by the respective counsel and was by the court overruled. After the demurrer to the writ of mandate in the lower court was overruled, said T. H. Cann applied to this court for an alternative writ of prohibition, in that certain proceeding wherein the state of Washington on the relation of said Cann, was plaintiff, and the Hon. Wm. Hickman Moore, judge of the superior court of

King county, was defendant. *Ante,* p. 115 (62 Pac. 441.)
This court granted the alternative writ of prohibition,
which was made returnable on the 6th day of October,
1900. On the 8th day of October, 1900, said writ of pro-
hibition was by this court denied. In that suit we held that
the superior court had jurisdiction of the subject matter;
that is, jurisdiction to compel by writ of mandamus the
chairman and secretary of a political convention to certify
the nominees of the convention, so that their names might
be placed on the official ballot provided by statute. For
that reason we denied the writ. We further held in that
suit that questions of law arising under the exercise of
such jurisdiction could be reviewed only on appeal, or by
certiorari, if there was not a plain, speedy, and adequate
remedy at law by appeal. The original mandamus pro-
ceeding instituted in the superior court had been continued
for trial from the 3d day of October until 9:30 o'clock on
the 9th day of October, 1900. On the 9th day of October,
1900, said C. G. Austin appeared in the superior court in
person and by L. B. Stedman, one of his attorneys, ready
for trial. The defendant Samuel H. Piles did not appear
in person or by counsel, neither did the said T. H. Cann
appear in person or by counsel, but the said defendant A.
Muchmore appeared in person at said time. The court con-
tinued the matter of said trial for the appearance of all the
parties until a quarter of eleven o'clock, at which time the
plaintiffs in said action introduced their evidence, and an
order was entered directing a peremptory writ of mandate
to issue against said defendants, compelling them to certify
the name of C. G. Austin to the clerk of the board of
county commissioners of King county, as one of the regu-
lar nominees of the county Republican ticket of said county
for the office of justice of the peace of Seattle precinct,
aforesaid. Thereafter, and on the 10th day of October,

280 STATE, EX REL. CANN v. MOORE.

1900, the said Samuel H. Piles appeared in person before the said superior court, and the said defendants in said suit and the said T. H. Cann appeared by John E. Humphries, one of their attorneys; and the said Samuel H. Piles, feeling aggrieved at a recital contained in said writ to the effect that he had arbitrarily declared said T. H. Cann, instead of the said C. G. Austin, the nominee of said convention, and there being present also in court at said time L. B. Stedman and Wilmon Tucker, two of the attorneys for the relator in said suit, it was then and there agreed in open court, with the consent of all parties, and upon the suggestion of said defendant Samuel H. Piles, that said writ of mandate be amended by inserting in place of the objectionable matter mentioned, in effect, that said Samuel H. Piles had by mistake and inadvertence declared the said T. H. Cann, instead of the said C. G. Austin, the nominee of said convention.

It is, in effect, recited in the peremptory writ of mandate, as well as pleaded in the affidavit for the same, that the action of the chairman in failing to announce the nomination of C. G. Austin on the first ballot, and in ordering a second ballot, arose through a mistake and misapprehension. No protest was made in the convention by any one against the action of the chairman, but the convention acquiesced therein. As to the second ballot, on which T. H. Cann was declared the other nominee, the peremptory writ recites:

"It appearing to said Piles from the tally sheets submitted to him by A. Muchmore as secretary of said convention, that one hundred and twenty-five votes constituted the majority of the total votes cast; that after the adjournment of said convention the said A. Muchmore discovered that he had made an error in his figures, and that one hundred and twenty-five votes did not constitute the majority of the total votes cast, and, as a matter of fact, Judge Cann did not receive the nomination on said second ballot."

It nowhere appears in the proceedings, or in the petition upon which the alternative writ issued, that the nomination of the relator was announced through fraud or oppression; nor does it appear that any objection was made to the announcement of the chairman during the proceedings of such convention in relation to the nomination of the relator. By these proceedings the relator, T. H. Cann, seeks to review the judgment of the court below in granting said peremptory writ of mandamus. Appeal by the ordinary methods will afford no remedy, because the election will have taken place before such appeal can be perfected. The petition for the writ of mandamus is set out in the opinion filed in the writ of prohibition proceedings, and it is not necessary to repeat it here.

The respondent has filed a motion to quash the writ of review. The affidavit upon which the writ issued was filed in this court on October 12, 1900. No notice of the application for the writ was given to respondent or to his attorneys. The respondent moves to quash, (1) because no notice of the application was ever given to the respondent or to his attorneys; (2) that no bond was ever given as required by law; (3) that said writ does not contain any recital of the errors to be reviewed, and that no copy of the petition or affidavit for said writ has ever been served upon respondent or his attorneys; (4) that this court has not acquired jurisdiction to hear this writ; (5) that no errors are pointed out which can be reviewed upon this writ. Section 5742, Bal. Code, provides that the court may require a notice of the application to be given to the adverse party, or may grant an order to show cause why it should not be allowed, or may grant the writ without notice. In this case the court granted the writ without requiring notice. While the writ of review is in the nature of an appeal, it is a special statutory proceed-

ing, and the statutes relative to the same do not expressly require a bond to be given by the relator as upon appeal; and the writ was issued by the court in this instance without requiring such bond. Section 5744, Bal. Code, prescribes the contents of the writ, and a recital of the errors complained of is not required by that section. The affidavit upon which the writ issued recites the errors complained of, and that is sufficient notice to the respondent.

It is further claimed that the mandate of the lower court has been carried into effect, and a reversal will therefore be of no avail to the relator. In case of reversal the chairman may still certify the nomination of the relator, and it will then devolve upon the secretary of the board of county commissioners to place the name of the relator upon the official ballot. For these reasons, the motion to quash must be denied.

It is apparent from this peremptory writ that the chairman, in announcing that T. H. Cann was the nominee, did so after consulting the record kept by the secretary. It becomes important to ascertain what effect the announcement made by the chairman had upon the proceedings of the convention. It is a general rule of parliamentary law that every assembly meets with the implied understanding that it will be governed and controlled by the general customs applicable to assemblies, which customs are called "parliamentary law." An assembly cannot speak for itself. The duty of presiding over its deliberations and ascertaining its will and announcing the same has become the principal and much the most important of all the chairman's functions. In all his official acts and proceedings he represents and stands for the assembly. A political convention, like any other assembly, speaks through its presiding officer. If mistakes are

made in a convention, the convention itself, and not the court, must rectify such mistakes. When the presiding officer announces the result of a ballot, or that the nomination of a certain person has been made, and there is no protest from the convention or any member thereof, and the convention acquiesces in that announcement, the nomination or result of a ballot so announced must be considered and treated by the courts as the will of the convention. The very fact that the convention accepted without protest or objection the declaration made by its chairman that T. H. Cann was the choice of the convention for justice of the peace was an agreement of the convention that he was the candidate for that office, to be supported by the party the convention represented. The supreme court of Minnesota, in the case of Phillips v. Gallagher, 42 L. R. A. 222 (76 N. W. 285), a case somewhat similar to the one at bar, after reciting the facts of the case, says:

"We have then for our decision this question: A ballot is taken by a political party convention for the purpose of selecting a nominee for the office of sheriff. The petitioner in fact receives a majority of the votes, but without declaring him the nominee, and on the report of the tellers, the convention, without any fraud or oppression in the premises, declares the ballot irregular, and that another ballot be taken. A third party is then declared by the convention to be its nominee. Is the petitioner legally entitled to the peremptory order of this court directing the officers of the convention to issue to him a certificate of nomination? * * * Counsel for the petitioner claims that the rules of law applicable to an election contest must be followed in determining whether the petitioner is in fact and law the party nominee. It is true, as claimed, that, in election contests proper, the vital question is how many votes were cast for or against a candidate, and that the party actually receiving a majority of the votes is entitled to the office, notwithstanding any act or omission of the election offi-

cers. But such rules have only a limited application to a political convention, which has control over its own proceedings and officers, in the absence of any statutory regulations, and may proceed according to party usages and customs. The questions which such a convention deals with are essentially political, and it would be a menace to the right of the members of a political party to select their own party nominees, and to the respect which should be entertained for judicial tribunals, for the courts to review and reverse the proceedings of a political convention, in the absence of fraud or oppression on its part or of its officers. The delegates in a nominating convention meet for the purpose of selecting and agreeing upon candidates for office, to be supported by the party. The discharge of this duty involves the exercise of judgment and discretion on the part of the members of the convention, and a majority of them have, in the absence of fraud or oppression, the right to control the action of the convention, and to correct or reverse any action taken by it. Such a convention is a deliberative body, and unless it acts arbitrarily, oppressively, or fraudulently, its final determination as to candidates, or any other question of which it has jurisdiction, will be followed by the courts. See *State, Childs v. Kiichli,* 53 Minn. 154, 19 L. R. A. 779; *Manston v. McIntosh,* 58 Minn. 528, 28 L. R. A. 605; *Re Fairchild,* 151 N. Y. 359. Any other rule would be intolerable and permit the courts to impose upon a party a nominee contrary to the wishes of its members, as finally expressed by their representatives in convention. It follows that the mere fact, if it be one, that the petitioner in this case received a majority of the votes on the first ballot, did not necessarily make him the party nominee; for it was entirely competent for the convention to declare the ballot informal or irregular, and take another. To deny the convention this right would deprive it of the right to deliberate, and correct or reverse its proceedings. * * * In the case at bar the action of the convention as to the ballot in question was taken while the subject of the nomination of a candidate for sheriff was still pending, and before any final conclusion had

been reached. It is true, as claimed, that the tellers were not authorized to declare the ballot foul, but should have reported the facts, unless there was some party usage to the contrary; yet the fact remains that after hearing the report the convention acquiesced in the chairman's ruling that another ballot was in order, and voted that the ballot was irregular, and that another one be taken, which was done, resulting in the nomination, not of the petitioner, but the intervenor. Such action of the convention was taken without fraud or oppression, and the court will not reverse it."

After two ineffectual ballots of a joint convention of a city council held on January 5, 1892, to elect a collector of taxes, a third was had, all the members voting. K. received fifteen, and P. thirteen, votes, and the mayor, who presided, declared K. elected. A dispute arose over the second ballot, in which P. received fourteen, K. ten, and B. three, votes, and there was one scattering vote, which the tellers and the mayor declared to be illegible, and the mayor decided that no choice had been made. Some members thought that the vote was intended for P. and that it should be counted for him. At a joint convention held two weeks thereafter, P. was declared elected tax collector; the convention voting that the third ballot, being the one which resulted in the choice of K. as collector at the meeting of January 5th, be declared void. The board of aldermen refused to accept K.'s bond. Mandamus was brought by K. against the board of aldermen for the purpose of declaring P. not elected, and K. elected, and to compel the board to accept K.'s bond. The court, in rendering its decision, says:

"The justice who heard the case has found, if it was competent for him so to find, 'that the paper [illegible ballot] should be counted as a ballot, and that the voter who cast it had not legibly expressed his choice.' Without considering whether there is any absolute rule

of law as to what should be done with a vote of this kind, it is plain that the mayor's decision on the facts was a reasonable one, and that it was for the tellers in the first instance, and then for the mayor, to make the decision. If the name on the vote could not be made out with reasonable certainty, it ought not to have been counted for any person; if the vote was cast by a member of the convention as a vote for a real, and not a fictitious person, it should have been counted in ascertaining the whole number of votes cast. *The convention, by proceeding to another ballot, in which all the members voted, assented to the decision of the mayor, and the petitioner, having been elected on that ballot, and having been duly declared elected, and the convention then having been dissolved without taking any action affecting this declared result, the petitioner must be held to have been duly elected to the office.*" *Keough v. Holyoke,* 156 Mass. 403 (31 N. E. 387).

In the case under consideration, the chairman's ruling on the first ballot, that Mr. George, only, had been nominated and another ballot was in order, and his announcement on the second ballot that T. H. Cann had been nominated, were acquiesced in by the convention, and were its final determination as to the candidates. *Phillips v. Gallagher, supra; Keough v. Holyoke, supra.*

The supreme court of Michigan, in the case of *Stephenson v. Boards of Election Commissioners,* reported in 42 L. R. A. 214 (76 N. W. 914), uses the following language:

"Among the dangers that courts should guard against is the unwarranted assumption of power under the false impression that they, and they only, can right all the wrongs which arise from the conduct of public affairs. They have only such powers and authority as the constitution and laws confer upon them. We have seen that several courts have held that not until the intention of the legislature is clearly manifested will they undertake to control political action."

It should require a clear and explicit expression of legislative intention to that effect to justify the conclusion that it was the intention of the law to deprive a political convention of the recognized parliamentary right of control over its own proceedings, its officers, and its nominees. The republican convention having determined in the manner indicated, between the opposing candidates, which thereof had been nominated, and having thereby selected T. H. Cann as its candidate, such action was final and conclusive and should be followed by the courts. *Phelps v. Piper,* 33 L. R. A. 53 (67 N. W. 755).

The court of appeals of New York, in the recent case of *In re Fairchild,* 151 N. Y. 359 (45 N. E. 943), uses the following language:

"It is much more proper that questions which relate to the regularity of conventions, to the nomination of candidates   *   *   *   should be determined by the regularly constituted party authorities, than to have every question relating to a caucus, convention or nomination determined by the courts, and thus, in effect, compel them to make party nominations, and regulate the details of party procedure instead of having them controlled by party authorities."

If courts are to be called upon to rectify mistakes of the kind complained of, there will be no end to questions that might arise. Some disappointed candidate might, after the convention had adjourned, question the correctness of an announcement by the chairman of the ward or precinct delegation of the vote of such ward or precinct. All these questions are matters which should be settled in the convention. When these matters have not been called to the attention of the convention, it is too late, after the convention has adjourned, to seek for the first time to rectify such mistakes in the courts; for

thereby the courts will be compelled, in effect, to make party nominations. The judicial branch of the government should not attempt to supervise political actions and matters peculiarly within the control of political conventions. Unless a convention acts arbitrarily, oppressively, or fraudulently, its final determination as to candidates should be followed by the courts. There can be no doubt that, when the republican convention mentioned in the pleadings received the declaration of its chairman as to the nomination of T. H. Cann as justice of the peace for Seattle precinct, without protest or objection, it made the chairman's declaration its declaration. When the convention adjourned *sine die,* it was with the understanding that T. H. Cann had been nominated for justice of the peace, and that he was the choice of the convention for that office. It is true that this understanding may have been caused by the acts of the chairman in announcing, through a mistake, no election on the first ballot, and Cann's nomination on the second ballot; but that does not alter the fact that the convention accepted such announcements as the truth and acquiesced therein. In certifying to nominations the officers of the convention but carry out the will of the convention as finally determined. The statute laws of this state have not clothed the courts with power to revise the proceedings of political conventions, and they should not interfere except in cases of fraud or oppression.

For the reasons given in this opinion, the court below should have sustained the demurrer of relator to the affidavit and petition for the writ of mandamus on the ground that the same did not state a cause of action entitling C. G. Austin, the relator in that proceeding, to the relief prayed for. It follows that the judgment of the court below, in granting the peremptory writ of mandate, must be reversed, and it is so ordered.

DUNBAR, C. J., and FULLERTON and REAVIS, JJ., concur.