[No. 4047.    Decided October 14, 1901.]

THE STATE OF WASHINGTON *on the Relation of C. B. Smith,* v. SUPERIOR COURT OF KING COUNTY, BOYD J. TALLMAN, *Judge.*

EMINENT DOMAIN — STRUCTURES IN STREETS — DEPRIVATION OF ABUT-
TING OWNER OF LIGHT, AIR AND ACCESS — COMPENSATION.

One's right to light and air and access necessary to the use and possession of a lot abutting on a public street is property, within the meaning of art. 1, § 16, of the constitution, which provides that "no private property shall be taken or damaged for public or private use without just compensation having been first made or paid into court for the owner;" and, under this constitutional provision, it would be error of the court to permit him to be deprived thereof upon the giving of a bond by the appropriator to pay all damages the property owner might sustain.

WRIT OF REVIEW — WHEN LIES — INADEQUACY OF APPEAL.

The extraordinary remedy of writ of review will lie, although there may be a remedy by appeal, where such remedy by appeal is neither speedy enough nor adequate to preserve the fruits of the litigation when won, under the constitutional and statutory provisions which confer jurisdiction on the supreme court to issue such writs when necessary to the complete exercise of its appellate and revisory jurisdiction, and for the purpose of correcting any erroneous or void proceeding, when there is no appeal, nor in the judgment of the court any plain, speedy and adequate remedy at law.

SAME.

The action of the trial court in dissolving an injunction against the erection of a high trestle for street car purposes upon the street in front of one's premises, on condition that the appropriator give bond to pay the owner all damages, is reviewable by writ of review, even though the court might on appeal order the destruction of the trestle, since the damage would have been sustained by the erection and maintenance of the structure for a limited time, and the owner thereby delayed in receiving the compensation guaranteed to him by the constitution in advance of any appropriation of his property.

*Original Application for Writ of Review.*

*William Hickman Moore* and *Kerr & McCord,* for relator.

*Piles, Donworth & Howe,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—On the 13th day of September, 1901, the relator instituted a suit in the superior court of King county seeking to enjoin the Seattle Electric Company, a corporation, from building a trestle and elevated railway in Fourth avenue South (one of the public streets of Seattle) in front of relator's property, alleging that the trestle and elevated railway cut off the access to his said property and interfered with his light and air; said trestle being about to be constructed at a height of about twenty-five feet at one end of relator's property, and fifteen feet at the other end of said property, above the grade of the street, and occupying twenty-five feet in the middle of said street; the street being sixty-six feet wide. A restraining order was issued by the superior court of King County and the respondent, Hon. BOYD J. TALLMAN, one of the judges thereof, prohibiting said company from building said railway and trestle in said street in front of relator's property until the further order of the court, and fixing the 17th day of September, 1901, as the time at which defendant should show cause, if any it had, why injunction *pendente lite* should not issue of tenor similar to the restraining order. On the 17th day of September, 1901, the hearing of said matter was continued until the 18th day of September, at which time, both parties to said action being present and represented in court, a hearing was had upon complaint, answer, reply,

and affidavits; and the matter having on said day been submitted to the court for its decision, it thereafter, to-wit, on the 23d day of September, 1901, made the following statement and order:

"And now the court having duly considered the complaint, answer, reply, affidavits and exhibits, and it appearing to the court therefrom that the plaintiff and his property will sustain damage from the construction of the said structure, it is by the court ordered that the defendant, its servants, agents and employees, be and are hereby temporarily during the pendency of this action until otherwise ordered by the court enjoined and restrained from entering upon the street in front of plaintiff's property described in the complaint for the purpose of erecting or constructing the trestle and tracks mentioned in the complaint herein, or in any manner interfering with the plaintiff's right of access to said property over and along said street, or from in any way interfering with the free use of said street by the plaintiff and his access to said property; provided that this temporary injunction shall cease to be operative upon the defendant's executing and filing in court a bond running in favor of the plaintiff in the penal sum of $30,000, which bond shall be executed also by The American Surety Company of New York, a surety corporation authorized to do business in the state of Washington, and shall be conditioned that the defendant will well and truly pay to the plaintiff any and all damages which the plaintiff may suffer or incur by reason of the construction of the trestle, railway tracks and structures erected and to be erected by the defendant in Fourth avenue South, in the city of Seattle, in front of the property described in the complaint, and when said bond so executed shall be filed in the office of the clerk of this court, this injunction shall thereupon become void."

To that portion of the order commencing with the word "provided" the defendant excepted, and asked this court for a writ of review. The temporary writ was ordered,

the superior court answered, and a final hearing was had in this court on the 4th day of October, 1901.

The argument of counsel in this case covered a good many points, but there are, as we view it, but two controlling questions: (1) Has this court jurisdiction to issue the writ of certiorari in a case of this kind? And, (2) if it has such jurisdiction, has the petitioner presented facts sufficient to warrant the issuing of the writ. Section 5741, Bal. Code, is as follows:

"A writ of review shall be granted by any court, except a police or justice court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court any plain, speedy and adequate remedy at law."

It is insisted by the respondent that under the provisions of this section, which embraces the law governing the issuance of the writ, this court is without jurisdiction to issue the writ; that it is not sufficient to warrant the issuance of the writ that the proceedings of the tribunal, which are sought to be reviewed are in excess of the jurisdiction of such tribunal, or illegal or erroneous or void, or not according to the course of the common law, but that all of these conditions must exist concurrently before the writ can issue; that is to say, it must appear that there is no appeal, nor, in the judgment of the court, any plain, speedy, and adequate remedy at law; and it is insisted that there is both an appeal and a plain, speedy, and adequate remedy at law, because the statute (Bal. Code, § 6500) provides that a party aggrieved may appeal as follows:

"(1)   From the final judgment entered in any action or proceeding, and an appeal from any such final judgment shall also bring up for review any order made in the same action or proceeding either before or after the judgment, in case the record sent up on the appeal, or any supplementary record sent up before the hearing thereof, shall show such order sufficiently for the purposes of a review thereof.

"(2)   From any order refusing to vacate an order of arrest in a civil action.

"(3)   From an order granting or denying a motion for a temporary injunction, heard upon notice to the adverse party, and from any order vacating or refusing to vacate a temporary injunction: *Provided,* That no appeal shall be allowed from any order denying a motion for a temporary injunction, or vacating a temporary injunction, unless the judge of the superior court shall have found, upon the hearing, that the party against whom the injunction was sought was insolvent."

It is contended that, therefore, the right to appeal is expressly given to the plaintiff in the case at bar, and that it is not sufficient that there should not exist an immediate right of appeal. Many cases are cited by the respondent to sustain this contention, but we do not think they are pertinently cited. This court has held in a long line of recent cases that the extraordinary writs of certiorari, prohibition, and mandamus will not issue to correct the action of the superior court when the court is acting erroneously, either with or without jurisdiction, but always with the provision that there is an adequate remedy by appeal. This adequate remedy has not been construed to be as speedy a remedy as the remedy by extraordinary writ might be, but a remedy which preserves the fruits of the appeal when won. In other words, the *status quo* of the parties litigant must be preserved, and, if by awaiting the result of an appeal the fruits of the litigation

would be lost, the remedy has not been considered an adequate remedy. Section 4, art. 4, of the constitution of Washington, after reciting the original jurisdiction of the supreme court, says further:

"The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction."

In pursuance of the power conferred upon this court by this provision of the constitution, we have uniformly refused to relegate litigants to the right of appeal when it appeared that such appeal would be barren in its results, no matter how it eventuated. This court had occasion to construe this section of the constitution in *State ex rel. Barnard v. Board of Education*, 19 Wash. 8 (52 Pac. 317, 40 L. R. A. 317, 67 Am. St. Rep. 706), and compelled the superior court to allow a bond that would stay execution and supersede the judgment rendered, for the very reason that an appeal would not be an adequate remedy. It said:

"It is conceded that an appeal lies from the judgment of the court in quashing the writ, and, under the provision just read, for the purpose of making that appeal effective, and to insure the complete exercise of this court over that appeal, it becomes necessary and proper to supersede the judgment, otherwise the right to appeal which the statute has given would be of no avail to the appellant, for if the board of directors in the meantime were to proceed to remove him, when the case finally reached this court on appeal, it would have to be dismissed for want of merit, because the trial on merit would already have terminated. . . . We think this is exactly the kind of a case which is contemplated by the constitution, and that the only way that this court could maintain the complete exercise of its appellate jurisdiction would be by issuing the writ

prayed for.   There would be no meaning to the provision of the constitution, and no necessity for it, if it could only be held to apply to cases where supersedeas was provided for by the law."

See, also, *Lewis v. Bishop,* 19 Wash. 312 (53 Pac. 165); *Browne v. Gear,* 21 Wash. 147 (57 Pac. 359); *State ex rel. Washington Bridge Co. v. Superior Court,* 11 Wash. 366 (39 Pac. 644).

This question has also been passed upon directly by this court in *State ex rel. Cann v. Moore,* 23 Wash. 276 (62 Pac. 769), where the relator, Cann, sought to review the judgment of the court below in issuing a writ of mandate to the chairman and secretary of a political convention compelling them to verify the nominees of the convention, so that their names might be placed on the official ballot provided by statute.   This court, in reviewing the case, said:

"By these proceedings the relator, T. H. Cann, seeks to review the judgment of the court below in granting said peremptory writ of mandamus.   Appeal by the ordinary methods will afford no remedy, because the election will have taken place before such appeal can be perfected."

The cases cited by the respondent do not in any instance run counter to the principle announced, that the court, in aid of its appellate and advisory jurisdiction, will issue writs when it is necessary to preserve the fruits of an appeal.   In the first case cited, viz., *State ex rel. Reed v. Jones,* 2 Wash. 662 (27 Pac. 452, 26 Am. St. Rep. 897), it is true, the court said that:

"Prohibition, being an extraordinary remedy, is only to be resorted to in cases where the usual and ordinary forms of remedy are insufficient to afford redress.   It will not be allowed to take the place of an appeal or writ of error."

As showing, however, that the court did not entertain the view attributed to it by counsel for respondent, it continued:

"We are all of the opinion that the relators have a complete remedy by appeal from any final judgment that may be rendered by the superior court, and that there is therefore no necessity for resorting to the extraordinary remedy of. prohibition."

In the case of *State ex rel. Hamilton v. Superior Court,* 8 Wash. 271 (36 Pac. 27), cited by respondent, it was announced that there could be no appeal under the provisions of § 4 of article 4 of the constitution of the state of Washington, and that "to allow the relator to obtain a reversal of the judgment through the medium of certiorari which he could not obtain by appeal, would be to render nugatory the provision of the constitution above quoted"; that provision being the one providing that the appellate jurisdiction shall not extend to civil actions at law for the recovery of money where the original amount in controversy or the value of the property does not exceed the sum of $200.   That was only an announcement of the rule which has been announced several times since,—that no review of any kind was contemplated by the constitution where the amount involved was less than $200, and that it would be doing by indirection what the constitution prohibited from being done directly, to allow questions from which an appeal would not lie to be reviewed by this court in another way.   We have examined all the cases cited, but think that they in no way sustain respondent's contention.

We have been reasoning upon the assumption that there was no adequate remedy by appeal.   It is true that the judgment of the court upon these interlocutory proceedings may be reviewed upon appeal, but it is equally true

that in a case of this kind the appeal would not be adequate, and the *status quo* of the parties would not be preserved. By the time the appeal was reached in the ordinary course of law the structure would have been completed, and the damage worked. A constitutional right is involved here. Section 16 of article 1 of the state constitution provides that "no private property shall be taken or damaged for public or private use without just compensation having been first made or paid into court for the owner." This provision is so plain and mandatory that it seems impossible to construe it. The protection to the owner of property is not the protection guaranteed by a bond upon which suit would have to be instituted, and the party subjected to all the delays and dangers incident to a law suit, with the possibility of bondsmen becoming insolvent, nor any other compensation that is coupled with doubtful results, vexations, or delays. But the guaranty is that no private property shall be taken or damaged without just compensation having been first made, or paid into court for the owner. There can be but one question, if any, and that is, what is meant by the word "property." It is used in the constitution in a comprehensive and unlimited sense, and so it must be construed. It is not any particular kind of property that is mentioned, but the wording is, "no private property." It need not be any physical or tangible property which is subjected to a tangible invasion. The right to the use and possession of a lot abutting on to a public street is property. The right to light and air and access is equally property. These are rights that are a part of the consideration when the property is purchased. Without this right cities would not be built, because they could not be maintained, and the modern authorities are uniform that these are rights which are guaranteed by constitutional provisions similar to ours.

A very interesting and instructive case on this proposition is *Story v. New York Elevated R. R. Co.,* 90 N. Y. 124 (43 Am. Rep. 146), where the authorities are reviewed at length, and the conclusion reached that upon the purchase these rights become at once appurtenant to the lot, and form an integral part of the estate, and it makes no difference whether the streets were dedicated by the corporation or by individuals; citing *Barney v. Keokuk,* 94 U. S. 324, in support of that proposition, where it was held that there was no substantial difference between streets in which the legal title is in private individuals, and those in which it is in the public, as to the rights of the public therein. This was an action by Story to prevent the erection of an elevated railway in front of his lots. On the construction of such constitutions it is said by Lewis on Eminent Domain (2d ed.), § 56:

"If property, then, consists not in tangible things themselves, but in certain rights in and appurtenant to those things, it follows that, when a person is deprived of any of those rights, he is to that extent deprived of his property, and hence, that his property may be taken, in the constitutional sense, though his title and possession remain undisturbed; and it may be laid down as a general proposition, based upon the nature of property itself, that, whenever the lawful rights of an individual to the possession, use or enjoyment of his land are in any degree abridged or destroyed by reason of the exercise of the power of eminent domain, his property is, *pro tanto,* taken, and he is entitled to compensation."

Nor under constitutional provisions of this kind can the owner of property be compelled to take the initiative to protect his rights. In *Covington, etc., Ry. Co. v. Piel,* 87 Ky. 267 (8 S. W. 449), in discussing this question, it was said:

"Whether or not this reason controlled the decision of this court in the earlier cases is not now necessary to inquire, for it is manifest that a mere security in the bond of a corporation can not be regarded as *just compensation previously made the owner* within the spirit and meaning of the Bill of Rights. That the citizen would be more likely to receive compensation from the state out of an abundant treasury, and by reason of its power to enforce payment by exactions from its citizens in the form of taxation, than from a private corporation owning its corporate property, or the individual security given by it, will be readily conceded; but in what manner this protects the citizen who has been deprived of his property in his constitutional rights it is difficult to comprehend. The security may be more ample in the one case than in the other, and still his right of property has been destroyed in its appropriation to a public use, without just compensation previously made, and all that is left him, whether due by the municipality, county or corporation, is the right, if a voluntary payment is not made at the end of the litigation, to take coercive measures for the recovery of the value of his property to which he was clearly entitled from the municipality or the private corporation before either could use it for public purposes. Viewed in any aspect of the case, whether taken by the sovereign or by the corporation under sovereign authority, it is a destruction of the constitutional guarantee for the protection of private property to appropriate it, without the consent of the owner, to a public use without first making compensation to him in money for the value of the property of which he has been deprived;"

citing Cooley in his work on Constitutional Limitations, p. 562, where it is said:

"It is not competent to deprive him [the citizen] of his property and turn him over to an action at law, against a corporation which may or may not prove responsible, and to a judgment of uncertain efficacy."

But it is unnecessary to cite further cases, although there are many in point,—in fact, the current of decision

is almost universal in this respect,—for this court has put at rest this question in *Brown v. Seattle,* 5 Wash. 35 (31 Pac. 313, 18 L. R. A. 161), where it was held that, under the constitutional provision (§ 16, art. 1) that no private property shall be taken or damaged for public or private use without just compensation having first been made, damages are recoverable by the owner of the land abutting upon a street for any permanent injury inflicted upon such abutting land by any material change of grade or obstruction to the abutter's access, where the damages thus inflicted exceed the benefits. After citing many cases under constitutional provisions such as ours, the court said:

"Question was made in all these cases, as it has been made in this one, whether the addition of the word 'damaged' should be taken to mean anything further than was formerly covered by the word 'taken,' but it is manifest that no such construction could be sustained. 'Damaged' does not mean the same thing as 'taken,' in ordinary phraseology. The makers of the Illinois constitution used the word in that instrument for some purpose. Other states changed their constitutions for substantially the same purpose. They took the new phrase subject to the general rule of construction, that the adoption of constitutional or statutory language by one state from another adopts to some extent, at least, the construction put upon the borrowed language by the courts of the state from which it came. After almost twenty years of discussion and decision in Illinois and other states, we put the words 'taken or damaged' into our constitution, and they must have their effect . . . Objection is made by counsel to the allowance of the injunction, because it is said that the respondent should be left to her action for damages, as it could not be considered that it was intended by the constitution that the cities and towns of the state could be stopped in the progress of the work of improving streets by frequent injunctions on the part of property owners. A case has been brought to our notice which is

19—26 WASH.

exactly in point in its ruling, viz.: *Moore v. City of Atlanta,* 70 Ga. 611."

And after reviewing that case, which took the other view of the law, this court said:

"Justification for the decision was sought in the case of *Stetson v. Chicago, etc., R. R. Co.,* 75 Ill. 74, but the fact seems to have been entirely overlooked that the constitution of Illinois does not require that compensation be first made in any such case. We can foresee many difficulties, and perhaps much litigation, likely to ensue from the faithful enforcement of our constitutional requirement that damages be first paid; but we have no choice in the matter, and these difficulties, as well as many others, must be met and dealt with as they arise."

In *Peterson v. Smith,* 6 Wash. 163 (32 Pac. 1050), it was held that under § 16, art. 1, of the constitution, private lands could not be appropriated by a county for road purposes unless the amount of damages was ascertained in court in a proceeding instituted for that purpose; and a statutory law invading this right was pronounced unconstitutional. It was said that under the constitutional guaranty the owner of the land appropriated could not be compelled to present a claim for damages, but that he could remain quiet and be sure that before his property was condemned the county must ascertain his damages, and either pay it to him or pay it into court for his benefit, and that the amount of his damages must be ascertained in a court in a proceeding instituted for that purpose, and in which the defendant could appear and make his showing if he so desired. This has been the uniform holding of this court on this constitutional provision whenever it has arisen. It is a plain, specific right guaranteed by the constitution to the citizen, and must be respected. In this case the court below has denied the re-

lator this right, and has substituted one which, in its opinion, is adequate.

It is finally insisted by the respondent that the remedy by appeal is adequate, for the reason that the court would have a right, upon the final determination of the questions involved, to order the structure removed if it were ascertained that it was a damage to the relator. But this would be at least a very radical action on the part of the court, which would involve the destruction of property, and it is doubtful if a court would go so far as to order the destruction of property if it could be ascertained that the party complaining could be compensated by damages or in any other way. In any event, the damage, in a degree, would have been sustained by the erection and maintenance of the structure for even a limited time; and the party damaged would be delayed, at the very least, in receiving that which is guaranteed to him by the constitution in advance of the appropriation of or interference with his rights.

Another question might be involved in this case. The respondent, under the constitution and the law, might desire to contest the question of whether the use demanded was a public use before the appropriation could be made. It is finally suggested by the respondent that, in the event the legal questions are decided against him, the court should look into the record to discover whether any damage had been sustained by the relator. This proposition is strenuously combatted by the relator and many cases cited; but, conceding, without deciding, that it is the duty of the court to examine the record in the case on this question, we have made such an examination, and are satisfied that the judgment of the court in that respect was not erroneous. But the court having erred in the proviso attached to its judgment, that the injunction should

cease to be operative upon the execution of the bond ordered by the court, the case will be remanded, with instructions to maintain the injunction in force until its final determination.

REAVIS, C. J., and ANDERS, FULLERTON, HADLEY, and MOUNT, JJ., concur.