[No. 27777. Department Two. March 29, 1940.]

LATHAN DOCKSTEADER, *Respondent,* v. THE CITY OF CENTRALIA, *Appellant.*[1]

¹Reported in 100 P. (2d) 377.

*J. H. Jahnke* and *Geo. C. Ellsbury,* for appellant.

*J. O. Davies,* for respondent.

JEFFERS, J.—This is an appeal by defendant, city of Centralia, from a judgment entered on the 10th day of June, 1939, in favor of Lathan Docksteader, in an action instituted by plaintiff to recover damages to real property, claimed to have been caused by the construction of a viaduct on Marion street, in the city of Centralia, in front of plaintiff's property. The allegations of the complaint were denied by defendant's answer. The matter was tried to the court, and findings of fact were made and entered, which findings followed the allegations of the complaint, and, in so far as material, are as follows:

Finding No. 2. "That the plaintiff during all of the year 1936 and at the time of this trial was the owner in fee simple of that certain piece or parcel of real estate situated within the city limits of the city of Centralia and particularly described as follows: (Description)

"That at the time the defendant began to make the improvements hereinafter set forth there were certain improvements on said real property consisting of one-

story wooden store building about 30 x 40 and two wooden chicken houses each approximately 8 x 12.

"That the reasonable value of said real estate and improvements thereon was the sum of $1200.00."

Finding No. 3. "That beginning about the month of June, 1936 the defendant in the exercise of its governmental functions and as owner of said Marion street undertook to improve the said Marion street by constructing or consenting to the construction of a viaduct along said street so as to make an overhead crossing of certain railroad tracks crossing said Marion street and in doing so raised the level of said street to an extent of approximately 12 feet in front of the above described property owned by the plaintiff and in so raising the level of said street in front of plaintiff's property the defendant blocked and cut off for all practical purposes access to the aforesaid described property of the plaintiff and for all practical purposes destroyed the use and value of said property.

"That the plaintiff's property is situated on Marion street at the place where Windsor avenue intersects into said Marion street and that the intersection of Windsor avenue and Marion street prior to the construction by the defendant of the viaduct above mentioned was the principal business section of said district. That the construction of said viaduct destroyed the value of the plaintiff's property entirely for business purposes.

"The court finds that after the construction of said viaduct the reasonable market value of plaintiff's property was the sum of $550 and that the defendant by reason of the construction of said viaduct damaged the plaintiff's property in the sum of $650."

Finding No. 4. "That the court finds that the defendant prior to the construction of said viaduct did not condemn the property of the plaintiff and did not pay the plaintiff or offer to pay the plaintiff any sums whatsoever for the same."

Conclusions of law and judgment were entered in favor of plaintiff for the sum of $650. Motion for new

trial was timely made and denied, and this appeal by defendant followed.

We will take up appellant's assignments of error and, where necessary, discuss the evidence relevant thereto, introduced herein.

■ Appellant first contends, no claim for damages having been filed with the city in conformity with the statute, respondent's alleged cause of action could not be predicated upon any alleged tortious act of the city. On the authority of the case of *Wong Kee Jun v. Seattle*, 143 Wash. 479, 255 Pac. 645, 52 A. L. R. 625, and cases therein cited, we are of the opinion appellant's contention cannot be sustained. In the cited case, which considered all the prior decisions, we discussed *State ex rel. Smith v. Superior Court*, 26 Wash. 278, 66 Pac. 385, saying:

"It was held that the right to light, air and access necessary to the use of a lot abutting upon a public street is property of the owner within the meaning of the constitution, and not to be taken except in the manner provided by the constitution."

Again in the cited case, the opinion quotes from the case of *Kincaid v. Seattle*, 74 Wash. 617, 134 Pac. 504, 135 Pac. 820, as follows:

" 'We hold that the right to recover compensation for property taken by a city for a public use under § 16, art. I, of the constitution, is not a claim "sounding in tort," within the meaning of the statute, Rem. & Bal. Code, § 7995 (P. C. 77, § 133), or a contract claim within the meaning of the charter of the city of Seattle as construed in *Postel v. Seattle, supra* [41 Wash. 432, 83 Pac. 1025].' "

The *Kincaid* case was an action brought against the city of Seattle to recover damages to the real property of the plaintiff by reason of the grading of a city street.

We quote further from the case of *Wong Kee Jun v. Seattle, supra:*

"A mere temporary interference with a private property right in the progress of the work, especially such as might have been avoided by due care, would probably be tortious only. Improper blasting, causing debris to be cast upon the adjacent property, would seem to be tortious and not a taking or damaging under the constitution, but the removal of lateral support, causing slides or any permanent invasion of private property, must be held to come within the constitutional inhibition."

It appearing from the undisputed testimony that the construction by appellant of the viaduct on Marion street, in front of respondent's property, deprived respondent of access to his property for all practical purposes, and that such act comes within the constitutional inhibition, it was not necessary that a claim for damages to respondent's property resulting from such act be filed.

It is next contended that it was necessary for respondent to prove that the official grade of Marion street had been established by the city before the viaduct was constructed, and that respondent's building was constructed in reliance upon the established grade. In support of this contention, appellant cites *Ettor v. Tacoma,* 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061; *Muller v. Great Northern R. Co.,* 75 Wash. 631, 135 Pac. 631; and other cases.

We think the inapplicability of the *Ettor* and *Muller* cases, *supra,* to the facts herein, is shown by the following quotation from the *Muller* case:

"In *Ettor v. Tacoma,* 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061, it was held, that the abutting property owner had no right to maintain an action for damages on account of reducing the natural surface of the street in the course of its *normal* and *ordinary* improvement for street purposes to a grade line for the first time established." (Italics ours.)

Again, the undisputed testimony shows that Marion street, at the place where respondent's building was located, had been an existing street for about fifteen years, and was level at that point and a wide street, having plenty of room for people to stop and patronize a store located in the building. While it does not appear definitely, there is testimony to the effect that this building, or part of it, was constructed in about 1923.

We think it apparent that the building of this viaduct for an overhead crossing was not a *normal* and *ordinary* improvement of a street, for the purpose of bringing it to a grade line, and it follows that appellant's citations are inapt.

It is further contended that respondent did not show that appellant had anything to do with the construction of the viaduct. It was admitted that Marion street was within the city limits of appellant. Mr. A. R. Docksteader, father of respondent, when asked "Who built the viaduct?" answered "The city of Centralia." No objection was made to the question or answer. On cross-examination of this witness by counsel for appellant, the following occurred:

"Q. Now you made the statement here that the city of Centralia built the viaduct. Now as a matter of fact don't you know that the Northern Pacific Railway, under the Works Progress Administration, built that viaduct and the city of Centralia has never expended any money in the construction of that viaduct? A. No, I don't know that at all. Q. Don't you know that to be the fact? A. No, I don't."

In answer to further questions by counsel for appellant, the witness testified to the effect that, practically every time he was around this job, he saw one of the commissioners of the city there, who he understood was a supervisor for the city. The witness further testified that he saw this commissioner in conversation with the contractor; that he understood that the con-

tract was with appellant. No attempt was made by appellant to meet this testimony in any way. Appellant offered no testimony to show whether it was or was not interested in the construction of the viaduct.

In view of this state of the record, it must be held that respondent made a *prima facie* case that the viaduct. was being built by or with the consent of appellant. See *Thorberg v. Hoquiam*, 77 Wash. 679, 138 Pac. 304. That appellant would be liable for consequential damages resulting from the construction of an improvement such as was made in the instant case, whether actually constructed by it or with its consent, see 44 C. J. 451, § 2706.

■ It is next contended the damages were excessive. The undisputed testimony shows that there was a frame store building on this property, about twenty by sixty feet, with a built-in cold storage refrigerator for meats; that, prior to the building of the viaduct, it was in a good location, at the intersection of Windsor and Marion streets; that the viaduct cut off all access from Windsor street, unless one went around the end of the viaduct; that there was only a lane, twelve to fifteen feet wide, between the viaduct and the store; that the viaduct was above the street to such a height that cars passing over it, or one walking, would not even see the store; that the father of respondent bought the property in 1931 and paid two thousand dollars cash for it; that it had not been rented regularly for some years, but during the construction of the viaduct was rented for thirty-five. dollars per month to the contractor. Both Mr. Docksteader, the father, and respondent testified that the fair market value of this property before the viaduct was built was from $1,500 to $1,800, and that it had no market value after the building of the viaduct. There was also testimony that a store across the street

had closed since the building of the viaduct. The building undoubtedly was in a poor condition.

Appellant produced three real estate men, who testified to the effect that this property was worth about $350 before the viaduct was built, and about $150 afterwards. Mr. Galvin, one of the witnesses last referred to, further testified that the property would have no value as business property. Another one of these witnesses, a Mr. Grass, when asked upon what he based his familiarity with values in that vicinity, stated: "By the immediate adjoining property that was offered for sale." However, this witness would not quote any prices on any property in that immediate vicinity which was offered for sale. None of the three witnesses testified to any sales which had been made in that locality. On cross-examination, in answer to a question whether or not what property actually sold for— what this property and that one sold for—was the true test of its market value, the witnesses answered yes. It also appears from the testimony of a Mr. Workman, another witness for appellant, and from at least two of the witnesses last above mentioned, that property generally in that district had advanced in price, and that, if the property in question had not been affected by the viaduct, it would have been more valuable.

While it is apparent there was a conflict in the testimony as to value, and it is undoubtedly true that the trial court might have determined from this evidence that the damages suffered by respondent were less than those awarded by the judgment, yet the court saw all these witnesses and visited and viewed the premises, and we are not prepared to say that the court was not justified in finding that respondent was damaged to the extent of $650.

Appellant also contends the trial court erred in refusing to offset delinquent taxes, which it was shown

existed, against any award in favor of respondent. We assume this contention is based upon Rem. Rev. Stat., § 9229 [P. C. § 7559], which provides in part that, in eminent domain proceedings, the city may offset against any award by the jury or court any general taxes or local assessments unpaid at the time the award is made. We think it a sufficient answer to this contention to say that this is not an eminent domain proceeding. The city is not acquiring this property, and therefore it can have no interest in whether or not delinquent taxes on the property are paid. We do not think the cases of *Gibson v. Centralia*, 142 Wash. 533, 253 Pac. 787; *Bethany Presbyterian Church v. Seattle*, 154 Wash. 529, 282 Pac. 922; and *State ex rel. Oregon-Washington Water Service Co. v. Hoquiam*, 155 Wash. 678, 286 Pac. 286, 287 Pac. 670, cited by appellant, applicable herein.

Upon a consideration of this entire record, we conclude the findings of fact are supported by the evidence, and that the conclusions of law and judgment follow the findings.

The judgment is affirmed.

BLAKE, C. J., BEALS, STEINERT, and GERAGHTY, JJ., concur.