[No. 41569.    En Banc.    April 22, 1971.]

KING COUNTY REPUBLICAN CENTRAL COMMITTEE, *Respondent,* v. REPUBLICAN STATE COMMITTEE *et al., Appellants.*

*Edward N. Lange,* for appellants.

*Russell A. Austin, Jr.,* for respondent King County Republican Central Committee.

*James S. Munn,* for respondents Green and Davies.

HAMILTON, C.J.—This appeal is from a summary judgment decreeing that appellant, the Republican State Committee, is without authority to make procedural rules governing the process by which delegates to the Republican State Convention are chosen by county Republican Central

Committees. The following are the facts giving rise to this litigation.

At an organizational meeting held on January 11, 1969, the appellant adopted rules governing its organization and procedures. Later, in August, 1969, these rules were, in part, amended. With respect to delegates to the state convention, the rules, as amended, provided:

B. Each county shall have three delegates. The number of additional delegates to the State Convention and the allocation of those delegates to the counties shall be recommended through the Executive Board and approved by the State Central Committee.

C. The State Central Committee endorses the delegate type convention for each one of the 39 counties as against the open or closed type convention. The precinct caucus is the beginning of grass roots political organizations. To be entitled to its pro rata share of representation at the state convention as provided for in the preceding portions of Section 24, a county shall provide for and conduct duly publicized, open precinct caucuses at which delegates are elected to attend a delegate type county convention. The procedures to be followed in the local precinct caucus—county convention process shall be recommended through the Executive Board and approved by the State Central Committee. Such procedures approved by the State Central Committee shall be incorporated into the official call for the state convention and sent to all counties before January 15 of the convention year.

In December, 1969, in keeping with the foregoing, the state committee adopted procedural rules governing the selection of convention delegates at the precinct caucus—county convention level to be applied uniformly throughout the state. These rules were preparatory to the Republican State Convention scheduled to be held on August 8, 1970, and were included in the official call for that convention issued on January 14, 1970.

Meanwhile, on October 16, 1969, the King County Republican Central Committee adopted revised bylaws governing its local organization and procedures, including procedures for precinct caucuses and the county convention. These

bylaws were in conflict with the state committee's rules in several particulars, *i.e.*, in the number of delegates selected at precinct caucuses to attend the county convention, in the qualification of certain nonelected delegates to the county convention, and in the eligibility of persons between 18 and 21 years of age to participate in the precinct caucuses and the county convention. Pointing to the differences between the rules of the state committee and the King County Central Committee, the county committee issued its official call for precinct caucuses to be held on March 3, 1970, and directed such caucuses to be conducted pursuant to and in accord with the King County Central Committee's bylaws.

Taking note of the action of the King County Central Committee, the chairman of the state committee addressed a letter to the chairman of the King County Committee on February 19, 1970, urging compliance with the state committee's rules, and advising that a failure to abide by such rules could result in disqualification of the King County delegates at the Republican State Convention. Proceeding as planned, the King County Central Committee scheduled and held precinct caucuses on March 3, 1970, under the local rules, and on that date instituted this action seeking a declaratory judgment to the effect that the state committee was without authority to adopt procedural rules governing the county organization's selection of delegates to the state convention.

The principal contending parties, the King County Republican Central Committee and the Republican State Committee, both moved for summary judgment. On May 1, 1970, the superior court, after determining that there was no dispute of material fact, entered judgment by the terms of which it concluded that the appellant state committee was without authority to make rules governing the respondent county committee in the matter of choosing delegates to the state convention.

This appeal followed and, because of the close proximity of the scheduled state convention, the appellate process was accelerated and the cause was set for oral argument before

this court on June 9, 1970. In the meantime respondent, the King County Republican Central Committee, moved for dismissal of the appeal contending that appellant had failed to properly perfect the appellate record. Following the oral arguments directed to the motion to dismiss and to the merits, and mindful of the emergent nature of the case, this court, after full consideration of the record, the written briefs and the oral arguments of the parties, issued an order prefatory to this opinion on June 11, 1970, denying the motion to dismiss and reversing the judgment of the superior court. We now set forth our reasons for the prefatory order.

The moving respondent predicated its motion to dismiss the appeal upon the contention that appellant failed to bring before this court a certified statement of facts, and, further, that the order granting respondent's motion for summary judgment did not specifically identify the pleadings, affidavits, and documents considered by the trial court in entering the judgment.

The appellate record before this court consists principally of a transcript, certified by the clerk of the superior court, containing the pleadings, the respective motions for summary judgment with attached affidavits and documents, and the trial court's judgment. Subsequent to the filing of respondent's brief including its motion to dismiss, and on June 5, 1970, appellant supplemented the record by filing a certificate of the trial judge wherein he stated that the transcript on file contained all of the matters and proceedings which were considered by him in rendering judgment. Appellant contends the record is thus complete.

In *American Universal Ins. Co. v. Ranson,* 59 Wn.2d 811, 815, 370 P.2d 867 (1962), we spelled out the rule to be followed in appealing from a summary judgment, together with the reasons therefor, as follows:

In an appellate review of a summary judgment entered pursuant to Rule of Pleading, Practice and Procedure 56, RCW Vol. 0, this court can review only those matters that have been presented to the trial court for its consideration before entry of the summary judgment. The mat-

ters considered may be certified to this court by either of two methods, or a combination of them. First, they may be incorporated in a statement of facts certified by the trial court; second, they may be identified with particularity in the summary judgment signed by the trial court and then furnished to this court by transcript certified by the clerk of court. The reason is obvious: it would be unfair to consider, on appellate review, matters not presented to the trial court for its consideration. We must have before us the precise record—no more and no less —considered by the trial court.

Basing its motion upon this procedural rule, and in support of the motion, respondent points to *Kataisto v. Low,* 73 Wn.2d 341, 438 P.2d 623 (1968), wherein we affirmed a summary judgment for the reason that this rule had not been timely complied with. Furthermore, with respect to the belated certification of the contents of the transcript by the trial judge at the behest of appellant, respondent contends that it is ineffectual because it came without notice and after the filing of respondent's brief. In this latter regard respondent cites *Hill v. Tacoma,* 40 Wn.2d 718, 246 P.2d 458 (1952); *Paulson v. Higgins,* 43 Wn.2d 81, 260 P.2d 318, 266 P.2d 800 (1953); and *Popovich v. Department of Labor & Indus.,* 66 Wn.2d 908, 406 P.2d 593 (1965). In each of the cited cases this court denied an appealing party the remedy of curing deficiencies in assignments of error or in a certified statement of facts after the respective respondents' briefs had been prepared and filed.

We have no quarrel with the holdings of the cases cited by respondent. Under the circumstances in each case the holdings were justified. However, we do not find them applicable in the instant situation.

■ The trial court in its judgment recited that there was no material dispute of fact, and the parties in essence agree there is none. Neither was there any diversity of view as to the underlying question of law to be resolved, *i.e.,* the interpretation of RCW 29.42.010. Because of the significant and emergent nature of the matter in dispute the normal time periods for perfecting an appeal were substan-

tially shortened and the appellate process materially accelerated. Except for the interposition of respondent's motion, all parties, despite the abbreviated time factors, addressed ample and skillful written and oral arguments to the pertinent legal question involved. And the trial judge's supplemental certificate filed prior to the date set for oral argument, verified that the transcript before us represented no more and no less than the precise record considered by the trial court in ruling on the cross motions for summary judgment. Under these circumstances, we find no discernible or practical prejudice flowing to respondent, no unfairness to the trial judge, and no inconvenience to this court as a result of the belated certification of the record.

Although we are not prepared to deviate from the summary judgment review rule announced in *American Universal Ins. Co. v. Ranson, supra,* we are satisfied that the basic reason for the rule has been fully and fairly met in the instant proceeding. Accordingly, respondent's motion to dismiss the appeal was denied by our prefatory order of June 11, 1970.

We turn now to the merits.

■ At the outset, we pause to observe that historically courts have been extremely reluctant to take jurisdiction of or interfere in the internal affairs of political parties. It is only when the power so to do is expressly conferred by statute, or the issue involved is regulated by statute and the statute has been violated or misinterpreted that the courts may properly be called upon and entitled to assume any jurisdiction. *State ex rel. Cann v. Moore,* 23 Wash. 276, 62 P. 769 (1900); *Steele v. Johnson,* 76 Wn.2d 750, 458 P.2d 889 (1969); *Determination of controversies within political party,* Annot., 20 A.L.R. 1035 (1922); *accord,* 169 A.L.R. 1291 (1947).

With this in mind, we accordingly limit ourselves in the case presented here to a consideration of the pertinent statutes regulating political parties.

RCW 29.42.010, .020, and .030, respectively, provide:

Each political party organization shall have the power to:

(1) Make its own rules and regulations;

(2) Call conventions;

(3) Elect delegates to conventions, state and national;

(4) Fill vacancies on the ticket;

(5) Provide for the nomination of presidential electors; and

(6) Perform all functions, inherent in such an organization: *Provided,* That in no instance shall any convention have the power to nominate any candidate to be voted for at any primary election.

RCW 29.42.010.

The state committee of each major political party shall consist of one committeeman and one committeewoman from each county elected by the county committee at its organization meeting. It shall have a chairman and vice chairman who must be of opposite sexes.

RCW 29.42.020.

The county central committee of each major political party shall consist of the precinct committeemen of the party from the several voting precincts of the county. This committee shall meet for the purpose of organization at the county court house at two o'clock p.m. on the second Saturday in December after each state general election unless some other time and place are designated by a sufficient notice to all the newly elected committeemen by the authorized officers of the retiring committee. For the purpose of this paragraph, a notice mailed at least seventy-two hours prior to the date of the meeting shall constitute sufficient notice.

At its organization meeting, the county central committee shall elect a chairman and vice chairman who must be of opposite sexes; it shall also elect a state committeeman and a state committeewoman.

RCW 29.42.030.

The question to be resolved in the instant case may be stated as follows: Under the foregoing statutes, which of the two committees, the County Republican Central Committee or the Republican State Committee, has the superior power to make rules governing the methods of selecting

and the qualifications for county delegates to a state party convention?

In answering this question, the trial court concluded:

1. That the Republican State Committee is without authority to make rules governing the specific process by which the County Republican Central Committee chooses delegates to state conventions;

2. That the delegates selected by the County Republican Central Committee in accordance with its rules and regulations should be accredited as delegates of that organization to the Republican State Convention unless not qualified for other reasons.

We must disagree with the conclusions of the trial court. In so doing, we start with the premise that in our form of government major political parties have become significant and dynamic instrumentalities through which the beliefs and will of the electorate find influential expression at all levels of government—municipal, county, state and national. A viable political party organization is indispensable to the continuance of effective citizen participation in the affairs of state, and a degree of intraparty discipline is necessary to maintain the unity and integrity of the organization.

■ The Republican Party in this state is a "Major political party" as that term is defined in RCW 29.01.090.[1] Indeed, by virtually any terms it can be characterized as a major political party on the national scene. As an existing and acknowledged major political party it is, even absent statutory authorization, endowed with inherent powers of self-regulation toward the ends of establishing party policy,

---

[1] "'Major political party' means:

"(1) In a state-wide election, a political party of which at least one nominee received at least ten percent of the total vote cast at the last preceding state-wide general election;

"(2) In an election by a constituency confined to a political subdivision of the state, a political party of which at least one nominee received at least ten percent of the total vote cast in that political subdivision at the last preceding general election by that constituency;

"(3) In a city or town election, a political party of which at least one nominee received at least ten percent of the total vote cast in the last preceding general city or town election therein." RCW 29.01.090.

conducting conventions, endorsing candidates, managing campaigns, raising funds, enlisting members, electing organizational officers, and creating committees. And, in the management of its affairs it exercises its power, in part, by the enactment of appropriate rules and regulations.

In enacting RCW 29.42.010, the legislature gave heed and statutory recognition to the inherent organizational and functional powers vested in political parties. With the exception of the proviso appended to the statute, dealing with the nomination of primary candidates, the legislature did not otherwise undertake to unduly limit or restrict those powers. And, in enacting RCW 29.42.020 and .030, the legislature gave statutory body and being to the state and county central committees of major political parties, thereby statutorily establishing them as integral parts of the organizational structure of major political parties. These latter statutes are, however, silent as to whether such committees themselves constitute "political party organizations" within the contemplation of RCW 29.42.010. Only by strained construction of the statute can the conclusion be drawn that these committees are to be wholly autonomous bodies, each possessing the powers outlined in RCW 29.42.010, to be exercised independently of each other and apart from the statutory and inherent powers residing in their parent political organization.

Whatever may have been the intent in this latter respect, it is clear under general law that on a statewide basis the state convention of a major political party is the ultimate repository of statewide party authority. As is generally true with the deliberative bodies of voluntary associations, the state political party convention possesses the intrinsic power to determine the number, manner of selection, and the qualifications of its members. And, subject to the intervention of applicable statutory or constitutional provisions, the state convention is implicitly empowered to establish the permanent state organization of the party, create committees, delegate authority, and promulgate, adopt, ratify, amend, repeal or enforce intraparty statewide

rules and regulations. 25 Am. Jur. 2d *Elections* §§ 120, 121 (1966); 29 C.J.S. *Elections* §§ 83, 84 (1965).

██ Representative of a permanent state party organization, though subordinate to the overriding power of the party's state convention, is the state committee created by RCW 29.42.020. As a committee designed to function on a statewide level, it is necessarily invested with the inherent power to adopt rules and regulations for its own internal government, as well as to promulgate, subject to the overriding authority of the state convention, intraparty rules governing the statewide operations of the party as a political organization during the interval between conventions. Embraced within this intrinsic, though subordinate, authority rests the requisite jurisdiction to generate uniform statewide procedural standards for the selection, within each county, of delegates to the party's state convention. We perceive nothing in the language of RCW 29.42 that tends to diminish or remove from the state committee created by RCW 29.42.020 this inherent jurisdiction. To read into such statutes a design to vest in each of the 39 county central committees the exclusive authority to independently establish standards for the selection of delegates to the state convention would attribute to the legislature an intent to fragment major political parties and unreasonably hamper their functioning as a unit on a statewide level.

We accordingly conclude that within the statutory framework of RCW 29.42.010, .020 and .030, the Republican State Committee has the superior power over the County Republican Central Committee to promulgate rules relative to the selection and qualifications of county delegates to the party's state convention.

The prefatory order of June 11, 1970, reversing the judgment of the trial court, was issued for the foregoing reasons.

FINLEY, NEILL, McGOVERN, and STAFFORD, JJ., concur.

ROSELLINI, J. (dissenting)—I do not agree with the conclusion of the majority that the authority of the state committee should be sustained by this court. I can find nothing

in the statutes quoted in the majority opinion which purports to govern the manner of selecting delegates to major party conventions or to allocate authority to make rules respecting the selection of delegates. By reading into the statute a provision that the state committee shall determine the manner of selecting delegates, this court has, in my opinion, engaged in judicial legislation.

The disposition of this case is not governed by statute, for there is no applicable statute. We must look to the common law. Under that law, the courts have traditionally refused to interfere in controversies within a political party, in the absence of a controlling statute or where there is no clear legal right involved, and have left such matters for determination by the proper tribunals of the party itself or by the electors at the polls. *See* Annots., 20 A.L.R. 1035 (1922) and 169 A.L.R. 1281 (1947). Here, the matter was one to be determined by the highest tribunal of the party, which is the state convention. *See* 25 Am. Jur. 2d *Elections* § 120 (1966). The county central committee has attempted to bypass that tribunal by appealing to the courts. We should not entertain the action.

I would direct the superior court to dismiss the cause.

HUNTER and HALE, JJ., concur with ROSELLINI, J.