[No. 4314.   Decided August 26, 1902.]

# SEATTLE AND MONTANA RAILROAD COMPANY v. BELLINGHAM BAY AND EASTERN RAILROAD COMPANY.

EMINENT DOMAIN — QUESTION OF PUBLIC USE — INADEQUACY OF REMEDY BY APPEAL — CERTIORARI.

Under art. 4, § 4, of the state constitution giving the supreme court power to issue all writs necessary to the complete exercise of its appellate and revisory jurisdiction, and under art. 1, § 16, of the constitution, which declares that, in proceedings for the appropriation of private property for a use alleged to be public, the question of public use shall be a judicial one, the supreme court has power to issue the writ of certiorari for the purpose of bringing the determination of that question by the superior court before it for review, where the special statute governing appeals in condemnation cases restricts the supreme court to an inquiry into the "propriety and justness of the damages" awarded.

SAME — APPROPRIATION OF EXISTING RIGHT OF WAY.

Under the statute of this state authorizing the appropriation by corporations of "all land, real estate, or other property" necessary in the conduct of their business, provided it be for a public use, one railroad may condemn for right of way purposes that portion of the right of way of another road which is not in use for railroad purposes, or necessary for the exercise of the latter's corporate franchises.

SAME — SUFFICIENCY OF SHOWING MADE.

In an action by one railroad company seeking to appropriate a portion of the right of way of another railroad company, a judgment of condemnation is warranted, where it appears that the right of way was one hundred feet wide; that a width of sixty feet is sufficient for all trackage purposes contemplated by the owner; that the company seeking appropriation requires a strip but twenty-eight feet wide; that the operation of trains by the two railroads paralleling one another is practicable and reasonably safe; and that necessity exists for such appropriation in order to enable the appropriator to reach its terminal grounds.

*Original Application for Certiorari.*

*Kerr & McCord,* for petitioner.

*Dorr & Hadley,* for respondent.

The opinion of the court was delivered by

REAVIS, C. J.—The Bellingham Bay & Eastern Railroad Company, respondent, brought an action in the superior court of Whatcom county to condemn for its use as a right of way certain real property owned by the Seattle & Montana Railroad Company, the petitioner, at Fairhaven. Upon the trial of the action it was adjudged that the right of way described in the petition and sought to be appropriated was necessary for the respondent railway company, and the intended use thereof a public one, and that the public interests required the appropriation thereof, and an order was entered directing that a jury be impaneled to assess the damages for the taking of petitioner's property. Petitioner excepted, and in this proceeding prays a review of the adjudication that the property sought to be condemned can be taken for this use, or that it is for a public use and required by the public interest, and denies the power to appropriate the property of the petitioner, because, as alleged, it is already appropriated by petitioner for a public use; that is, the construction and operation of its own railway. After finding the preliminary facts of notice, hearing, and that each, petitioner and respondent, is a railway company operating lines of railroad between Fairhaven and other points, and that each is authorized to own and condemn real property for such uses, the other material facts in issue are set forth as follows:

"12. That the respondent [here petitioner], Seattle & Montana Railroad Company, is the owner of the land sought to be appropriated and that the same are embraced within a tract of land 100 feet in width owned by said

Seattle & Montana Railroad Company and claimed by it as right of way for its railroad; which said 100 foot strip of land has been acquired by said Seattle & Montana Railroad Company by purchase for railway purposes, but has never been condemned for such purposes.

"13.    That the respondent [here petitioner] Seattle & Montana Railroad Company requires for the operation of its railway line and system over and across said 100 foot strip and alleged right of way, one main track, a passing track and two storage tracks and no more, making four tracks in all, and that none of said land sought to be appropriated by petitioner, Bellingham Bay & Eastern Railroad Company, is necessary or required for the use of the respondent Seattle & Montana Railroad Company, in the operation of its railroad, and that the taking and appropriating thereof by said petitioner, will not interfere with the operation of said four tracks of said respondent Seattle & Montana Railroad Company, nor with the operation of its said railway system in any manner or at all.

"14.    That in the construction and for the necessary operation and maintenance of said line of railroad of said petitioner [here respondent], it is necessary for it to have each and every part and parcel of said above described tract of land for such right of way for the uses and purposes of its railway over and across said lands, real estate, and premises as hereinbefore described.

"15.    That the contemplated use, for which the said land, real estate and premises are sought to be appropriated, is really a public use and that the public interest requires the prosecution of the enterprise being prosecuted by petitioner and requires the appropriation of said lands as prayed for in said petition, and that the said land, real estate and premises so sought to be appropriated are required and necessary for the purposes of such enterprise."

Petitioner excepted to the findings of fact numbered here, and the evidence is before us by stipulation. Respondent, the Bellingham Bay & Eastern Railroad Company, demurs to the petition for the writ, and, in object-

ing thereto, alleges want of jurisdiction in this court to issue the writ, and because the application does not state facts sufficient to state a cause of action.

1.   The demurrer will first be considered.   Our constitution (art. 1, § 16) declares:

"Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes.   No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, and no right of way shall be appropriated to the use of any corporation other than municipal, until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in courts of record, in the manner prescribed by law.   Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public."

"Whenever an act determines a question of right or obligation, or of property as the foundation upon which it proceeds such an act is to that extent judicial."   *Wulzen v. Board of Supervisors,* 101 Cal. 15 (40 Am. St. Rep. 17, 35 Pac. 353); *Sinking Fund Cases,* 99 U. S. 761.

The jurisdiction of this court is clearly defined in art. 4, § 4 of the constitution, as follows:

"The supreme court shall have original jurisdiction in habeas corpus and quo warranto and mandamus as to all state officers, and appellate jurisdiction in all actions and proceedings, excepting that its appellate jurisdiction shall not extend to civil actions at law for the recovery of money or personal property when the original amount in contro-

versy, or the value of the property, does not exceed the sum of two hundred dollars, unless the action involves the legality of a tax, impost, assessment, toll, municipal fine, or the validity of a statute. The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction. Each of the judges shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself, or before the supreme court, or before any superior court of the state, or any judge thereof."

It has appellate jurisdiction in all actions and proceedings except in civil actions at law for the recovery of money or personal property, where the original amount in controversy or the value of the property does not exceed the sum of $200. It may also issue all writs necessary to its appellate and revisory power. But it is urged that the court, in *Seattle & Montana Ry. Co. v. State,* 5 Wash. 807 (32 Pac. 744), denied the power to issue the writ of certiorari to review the adjudication of the question of public use and necessity in the superior court. It may be observed that the court there did not consider the nature of the appeal act in eminent domain cases, and the writ was denied because a remedy was assumed to exist in appeal. However, later, in the case of *Western American Co. v. St. Ann Co.,* 22 Wash. 158 (60 Pac. 158), it is decided that the only question which can be reviewed on appeal under the special statute for that purpose is the "propriety and justness of the damages;" and the following language found in *Western American Co. v. St. Ann Co., supra,*—"but we do not see any particular merit in this contention, for questions which the law submits to the exclusive jurisdiction of the superior courts may be

as purely judicial questions as though they were tried in this court,"—can only apply to the exception which the constitution declares to the appellate jurisdiction of this court. The legislature can make no exception. It may fail to provide the procedure for appeal in a special case, but the power of constitutional review still remains in this court. In *Browne v. Gear,* 21 Wash. 147 (57 Pac. 359), we defined the power of the superior court and the functions of the writ of certiorari under the statute. The writ was issued in *State ex rel. Cann v. Moore,* 23 Wash. 276 (62 Pac. 769). In *State ex rel. Smith v. Superior Court,* 26 Wash. 278 (66 Pac. 385), the writ was issued where appeal was inadequate, and the revisory power of this court was exercised in reviewing and correcting an order of the superior court. It having been adjudged that no review on appeal of the question of public use and interest involved in the exercise of eminent domain proceedings now exists, it follows the writ of certiorari may be issued to bring up the record for review in the proceedings for appropriation of the right of way through petitioner's real property; the application for the writ states sufficient cause for its issuance.

2. The real property through which the right of way is sought to be appropriated was purchased by petitioner eleven years ago, and is parcels included in a larger tract of tide lands purchased at the same time by the petitioner. Other portions of such land so purchased have been granted by petitioner to various parties, who have erected thereon improvements such as foundries and canneries. All the property lies within the city limits of Fairhaven. Petitioner has reserved one hundred feet for its right of way. There are two railroad tracks which are spurs in operation by petitioner upon this one hundred feet. The strip of land sought to be condemned is twenty-eight feet

taken off one side of the one hundred feet for a distance of several hundred feet in length. The respondent's road enters the town across the water and tide lots, and seeks to go to its terminal grounds by a line that diagonally crosses the tracks and right of way belonging to petitioner, also situated on tide land lots. It then seeks to continue on its proposed right of way of twenty-eight feet for several hundred feet parallel to the tracks of petitioner to its terminal grounds. It is maintained by counsel for petitioner that, where one railroad has appropriated real property for its uses, another railroad company cannot longitudinally appropriate a part of the right of way for the same uses, and the point is urged that property once appropriated to a public use cannot be condemned for another public use without express legislative authority. It is further asserted there is no such express authority from the legislature; and § 5647, Bal. Code, is referred to as containing an express provision for appropriation of a longitudinal section of existing right of way through canons, passes, and defiles, and it is inferred therefrom that such provision is exclusive, and no other appropriation of such right of way than expressed in the statute can be implied. The question is, does the section mentioned intend such rights of condemnation as is granted in the general statute of eminent domain? The right is expressed in the authority for judgment as follows:

"And at the time of rendering judgment for damages, whether upon default or trial, the court, or judge thereof, shall enter a judgment or decree authorizing said railroad company to occupy and use said right of way, road-bed, and track, if necessary, in common with the railroad company or companies already occupying the same, and defining the terms and conditions upon which the same shall be so occupied and used in common."

The purpose of this enactment is to prevent any railroad from occupying its own tracks exclusively where the physical conditions are such that another railway cannot be operated through such place, and the statute contemplates, if necessary, a common easement over the same land and tracks.   The section is a part of the general statute relating to eminent domain.    Sections 5637 to 5643 inclusive, Bal. Code, prescribe the procedure for condemnation of right of way by railroad companies.   The court in such proceedings must, from competent proof, adjudge that the contemplated use of the land sought to be appropriated is a public use, and that the public interests require the prosecution of the enterprise.   Perhaps the strongest authority in support of the position urged by petitioner is the case of *Illinois Central R. R. Co. v. Chicago, B. & N. R. R. Co.*, 122 Ill. 473 (13 N. E. 140). In that case an endeavor was made by the petitioner to condemn a part of the right of way along the Mississippi river bottom belonging to another railroad company.   The way had been acquired partly through a grant by congress, and the remainder by condemnation under the state statutes.    The general statute of Illinois authorized a railroad company to appropriate absolutely "a stream of water, water-course, street, highway, plank-road, turnpike, road, or canal."   The court held that, the legislature having undertaken to prescribe what particular public properties might be appropriated, the rule, *"expressio unius exclusio alterius,"* was applicable.   Our statute is general, and authorizes the appropriation of "all land, real estate, or other property" necessary for the construction of the railroad.   It also appears in the Illinois case that the right of way sought to be condemned was acquired by the railroad occupying it through legislative grant and by condemnation.   In some of the authorities cited by

counsel for petitioner the language used seems to justify the position urged by counsel, that a right of way owned by one railroad company cannot, without express legislative authority, be condemned for another public use of the same nature.    Among them are *Albany Northern Railroad Co. v. Brownell*, 24 N. Y. 345; *Baltimore & O. S. W. Ry. Co. v. Board of Commissioners*, 156 Ind. 260 (58 N. E. 837, 839); *State ex rel. New York, S. & W. R. R. Co. v. Paterson*, 61 N. J. Law, 408 (39 Atl. 680).    It may be observed that in some of these cases the claim made by the appropriator was for the condemnation of railroad tracks in operation, or for depot grounds already occupied, and the use sought by the condemnation was inconsistent with the operation of the railroad company already owning the property.    But the general rule maintained by the petitioner, and the authorities supporting the same, is not so applied as to prevent one railroad from taking the property which is not in use for railroad purposes, and not necessary for the corporate franchises.    Lewis, Eminent Domain (2d ed.), § 267a, and authorities cited.    The following rule stated in the text by the same author (§ 267b), seems to be well supported by the authorities referred to therein:

"It is manifest, however, that even a railroad company which is organized under a general law, may show a reasonable necessity for taking part of the right of way of another road, as when it is located through a town in which another road has been previously built, and the topography or other conditions are such that the new road cannot reasonably be located so as to accommodate the public and accomplish the object in view without either encroaching on the right of way of another company, or incurring ruinous, or greatly increased expense.    The same necessity may arise in mountainous countries, or else the first company might preclude all others from

reaching certain localities.    But this implied authority
only extends to the taking of so much of the right of way
of the first company as can be spared without material
detriment.    The question is, 'whether the new condem-
nation can be made without destroying the use and use-
fulness of that part of the first-acquired right of way
which is in actual use, or so obstructing or hindering or
embarrassing it as to render it unsafe.'    Just what the
degree of necessity must be to justify the taking it is
difficult to say.    One company cannot take part of the
right of way of another merely because it is more con-
venient.    It is largely a question of practicability and
expense, of comparative advantage and injury, having re-
gard always to the interests of the public, for whose benefit
the general authority is given and the particular taking
proposed."

3.    In the present instance it appears that about eleven
years ago petitioner acquired by purchase a considerable
area of tide lands in front of the city of Fairhaven.    This
quantity of tide lands was evidently not all acquired for
its corporate purposes and uses.    Subsequently it has sold
for private purposes several parcels, and still owns several
parcels not in use for railroad purposes.    Its reservation
of the one hundred feet for right of way has not yet been
used, with the exception of the two spurs for trackage
purposes extending from its station.    The proofs offered
by the petitioner tended to show a contemplated use for
at least four tracks, and that the same were intended to be
constructed immediately.    The proofs at the hearing also
tended to show that thirty feet was sufficient for the opera-
tion of two tracks, or sixty feet for the four proposed
tracks.    Respondent seeks to acquire twenty-eight feet for
two tracks.    There is testimony tending to show that the
operation of trains by the two railroad companies, if re-
spondent is given the appropriation sought, is practicable,
and, with care and some increased cost, is reasonably safe.

It was observed in *Mobile & Girard R. R. Co. v. Alabama Midland Ry. Co.,* 87 Ala. 507 (6 South. 404):

"As a general proposition, it may be said, that railroad companies, organized under the general laws, are authorized by the statutes to acquire by condemnation the right of way of another corporation, when essential to the accomplishment of their principal purposes, or when there is space for the tracks of parallel roads without obstructing the use of the same. The statutes have been so construed, and to that construction we adhere. *Annis. & Cin. R. R. Co. v. Jacksonville, G. & A. R. R. Co.,* 82 Ala. 297; *East & West R. R. Co. v. E. T., Va. & Ga. R. R. Co.,* 75 Ala. 275."

The principle is stated in the *Matter of City of Buffalo,* 68 N. Y. 167:

"In determining whether a power generally given is meant to have operation upon lands already devoted by legislative authority to a public purpose, it is proper to consider the nature of the prior public work, the public use to which it is applied, the extent to which that use would be impaired or diminished by the taking of such part of the land as may be demanded for the subsequent public use. If both uses may not stand together, with some tolerable interference, which may be compensated by damages paid; if the latter use, when exercised, must supersede the former, it is not to be implied from a general power given, without having in view a then existing and particular need therefor, that the legislature meant to subject lands devoted to a public use already in exercise, to one which might thereafter arise. A legislative intent that there should be such an effect will not be inferred from a gift of power made in general terms."

The following authorities are pertinent: *Grand Rapids, etc., R. R. Co. v. Grand Rapids & Indiana R. R. Co.,* 35 Mich. 265 (24 Am. Rep. 545); *Colorado E. Ry. Co. v. Union Pacific Ry. Co.,* 41 Fed. 293; *Baltimore & O. S. W. Ry. Co. v. Board of Commissioners,* 156 Ind. 260 (58

N. E. 837) ;*Northwestern Telephone Exch. Co. v. Chicago, M. & St. P. Ry. Co.,* 76 Minn. 334 (79 N. W. 317). The necessity must always be shown when one railroad attempts to appropriate the property of another. This necessity was found by the court. This principle is stated in *Mobile & Girard R. R. Co. v. Alabama Midland Ry. Co., supra,* as follows:

"A necessity, such as authorizes one railroad corporation to condemn a part of the right of way of another, does not mean an absolute and unconditional necessity as determined by physical causes, but a reasonable necessity under the circumstances of the particular case, dependent upon the practicability of another route, considered in connection with the relative cost to one and probable injury to the other; and the right of condemnation is not made out, unless the petitioning company shows that the cost of acquiring and constructing its road on any other route clearly outweighs the consequent damage which may result to the older company, not including the question of competition for the business of a manufacturing (or other large) establishment on the line of the proposed route."

From the review on the merits, as it appears from the record before us, we conclude that no rule of law affecting the rights of petitioner has been violated to its prejudice. Relative to the facts found by the superior court, an examination of the bill of exceptions shows that competent proof was made of all the facts necessary to be found, and there is no such preponderance of proof against the findings as to set them aside. The order of the superior court is therefore affirmed.

ANDERS, MOUNT, DUNBAR, WHITE and HADLEY, JJ., concur.