The Terre Haute and Peoria Railroad Company, Appellant, *vs.* H. F. Robbins *et al.* Appellees.

*Opinion filed December 21, 1910.*

1. Railroads—*power of railroad companies to make operating contracts—right to hold land for depots.* Railroad companies incorporated under the laws of Illinois have power to make contracts with each other and with railroad corporations of other States for leasing or renting their roads or any part thereof, and may contract for and hold, in fee simple or otherwise, lands or buildings necessary for depot purposes.

2. Same—*railroad companies are authorized to connect with each other.* Railroad companies incorporated under the general law are authorized to connect with each other and with railroads of other States on such terms as may be mutually agreed upon, and railroads thus connected may be united and merged into a single line, or the two companies may agree upon the joint use of the same track as independent companies.

3. Same—*legality of operating contract cannot be questioned in condemnation proceeding.* In a proceeding by a railroad company organized under the general law to condemn private property in a city for a freight depot, the defendant cannot question the legality of the operating contract under which the petitioner is using the tracks of another company through the city.

4. Same—*law does not require a railroad company to condemn all necessary land at the same time.* The law does not require a railroad company to acquire, by condemnation, all the land necessary for the construction and operation of its road at the same time, and the fact that for many years the company has operated a portion of its line over the tracks of another company by lease or contract does not take away its right to condemn land necessary for its use along such portion of the line.

5. Eminent domain—*necessity for acquiring land for a new depot is a legislative question.* A railroad company, acting in good faith, may change the location of its depot and acquire the ground therefor by condemnation when the business of the company as a common carrier requires such change, and the courts will not deny the right to condemn upon the ground that the proposed change is unnecessary or inexpedient, unless there is a clear abuse of the petitioner's power.

6. Same—*railroad company operating trains through a city on another company's tracks may condemn land.* A railroad company organized under the laws of Illinois and operating its trains through a certain city over the tracks of another railroad company under an operating contract has power to condemn land necessary for its freight depot and switch track facilities.

7. Same—*when petitioner does not seek to condemn as lessee.* A railroad company organized under the general Railroad law but operating a portion of its line some twelve miles long over the tracks of another railroad company under an agreement of limited operation, which is in no sense a lease of the franchise rights and charter powers of such other company, does not, when proceeding to condemn land for a depot along such portion of its line, seek to condemn as a lessee but acts in its own right.

Appeal from the County Court of Macon county; the Hon. O. W. Smith, Judge, presiding.

Outten, Roby, Ewing & McCullough, for appellant.

Hugh Crea, Hugh W. Housum, and Whitley & Fitzgerald, for appellees.

Mr. Justice Carter delivered the opinion of the court:

This was a petition brought in the county court of Macon county by the Terre Haute and Peoria Railroad Company, appellant, to condemn certain property in the city of Decatur for the purpose of building thereon a freight depot. On a preliminary hearing before the court as to the right and authority of the petitioner to condemn the property in question, the court, on motion of appellees, dismissed the petition, holding that on the petition and evidence then be-

fore the court appellant was without such authority. This appeal was thereupon prayed and allowed.

January 17, 1887, petitioner was granted a charter to construct and operate a railroad from Peoria, Illinois, to a point on the eastern boundary of said State in Clark county, the line as constructed between these two points to pass through Decatur, in Macon county. It is now operating, through its lessee, the Vandalia Company, a railroad between these two points and thence eastward to Terre Haute, Indiana. From Maroa, a city in Macon county about twelve miles north of Decatur, to Decatur Junction, some two miles south of Decatur, appellant has not constructed and does not now own a track of its own, but has an agreement with the Illinois Central railroad whereby the trains of appellant are permitted to be operated between Maroa and Decatur Junction, and through said city of Decatur, over the track of said Illinois Central Railroad Company, the latter company also using said tracks for its own railroad business. At Maroa, and also at Decatur Junction, the tracks owned by appellant connect with the Illinois Central railroad, and by its contract arrangements with the latter company appellant has a continuous line of railroad from Peoria, Illinois, to the Illinois State line and thence to Terre Haute. Appellant has a freight house and team tracks in the city of Decatur which the testimony tends to show are inadequate because of restricted room, location and surroundings to meet its convenient and effective operative demands. In order to enable it to perform its duties as a railroad and common carrier of freight it has sought a new location in the city of Decatur for the purpose of constructing a new freight house and team tracks and the necessary approaches and has expended some $26,000 in acquiring property, but has been unable to agree with appellees as to the fair cash market value of the property owned by them and desired by appellant for this improvement.

The chief contention of appellees as showing that appellant is without power to condemn the property in question is, that appellant does not own the tracks and right of way upon which it is operating between Maroa and Decatur Junction. No question is made as to appellant being duly incorporated under the laws of this State and thereby authorized to condemn property for railroad purposes. To support their contention that appellant is without authority to condemn this property, appellees allege that appellant has been incorporated for twenty-three years, and long since, under the obligations placed upon it by its charter and the statutes, should have obtained the right of way over the fourteen or fifteen miles between Maroa and Decatur Junction. In *Morrison* v. *Forman,* 177 Ill. 427, it was argued that a railroad company could not condemn certain property because it had failed to finish its road within ten years from the filing of its articles of incorporation, and therefore, under section 26 of the act on railroads, its authority to condemn had ceased. This court overruled that contention, stating (p. 429) : "In a proceeding for the condemnation of real estate for railroad uses, the question of the *de jure* existence of the company cannot be determined. It is sufficient that the statute authorized the organization of the corporation and that the petitioner is a corporation *de facto.* Whether or not it has a legal existence as a corporation can only be determined by a direct proceeding,—the writ of *quo warranto.*" To the same effect are *Thomas* v. *South Side Elevated Railroad Co.* 218 Ill. 571 ; *Thomas* v. *St. Louis, Belleville and Southern Railway Co.* 164 id. 634; *Chicago and Eastern Illinois Railroad Co.* v. *Wright,* 153 id. 307; *McAuley* v. *Columbus, Chicago and Indiana Central Railway Co.* 83 id. 348.

Railroad companies incorporated or organized under the laws of this State have the power to make contracts and arrangements with each other, and with railroad corporations of other States, for leasing or renting their roads

or any part thereof, and also to contract for and hold, in fee simple or otherwise, lands or buildings in this or other States for depot purposes. Such companies also are authorized to connect with each other and with the railroads of other States on such terms as may be mutually agreed upon. (Hurd's Stat. 1909, chap. 114, pars. 44, 45, p. 1745; *Illinois Midland Railway Co.* v. *People,* 84 Ill. 426; *Lake Shore and Michigan Southern Railway Co.* v. *Baltimore and Ohio and Chicago Railroad Co.* 149 id. 272.) Railroads may thus be united and merged into a single line or two companies may arrange for the joint use of the same tracks. (*Illinois Central Railroad Co.* v. *Chicago, Burlington and Northern Railroad Co.* 122 Ill. 473.) The contract between appellant and the Illinois Central Railroad Company for the use of the latter's right of way and tracks between Maroa and Decatur Junction, executed on November 14, 1894, for the period of twenty-five years, can be ended by either party on one year's notice. The law does not require a railroad company to acquire, by condemnation, all the lands necessary for the construction and operation of its road at the same time. (*Fisher* v. *Chicago and Springfield Railroad Co.* 104 Ill. 323; 2 Lewis on Eminent Domain,—2d ed.—sec. 607.) While a corporation must act within its charter powers and the statutes of the State, it is manifest that a railroad can be operated, within its charter, without owning all of its right of way and tracks, by leasing from other railroad corporations, as provided in the statute.

In this connection it is urged by appellees that the contract between the Illinois Central railroad and the appellant provides that the latter shall not take passengers or freight, locally, between Decatur and Maroa or intermediate points between said stations, and that this destroys all competition between these railroads between those points. This court, in *Thomas* v. *St. Louis, Belleville and Southern Railway Co. supra,* stated, on page 639: "While it retained its fran-

chise, the question of whether or not it was improperly exercising such franchise was one between it and the State. Any question of illegal combination or arrangement entered into by it that might affect the franchise could only be raised by the People in a proceeding instituted for that purpose."

It is further urged by appellees that no necessity exists for the condemnation of the property in question. Courts have the right to determine whether the use of private property proposed to be taken and appropriated is public in its nature, but when the use is public it has been held that the courts cannot inquire into the necessity or propriety of exercising the right of eminent domain. (*Smith* v. *Drainage District,* 229 Ill. 155; *Chicago, Rock Island and Pacific Railroad Co.* v. *Town of Lake,* 71 id. 333.) Courts will prevent an abuse of the exercise of the right of eminent domain, but where property is subject to condemnation, in the absence of a clear abuse of the petitioner's privilege, the court cannot deny the right to condemn upon the ground that to condemn is unnecessary or inexpedient, as the determination of that question devolves upon the legislative department of the government and not upon the judiciary. (*Pittsburg, Ft. Wayne and Chicago Railway Co.* v. *Sanitary District of Chicago,* 218 Ill. 286; *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 id. 511; 2 Lewis on Eminent Domain,—3d ed.—secs. 602, 603.) A railroad company, acting in good faith, may under certain circumstances change the location of its depot. (*Chicago and Eastern Illinois Railroad Co.* v. *People,* 222 Ill. 396; *Chicago and Northwestern Railway Co.* v. *Mechanic's Institute,* 239 id. 197.) All the evidence introduced on this point tends to show that the business of appellant required additional depot, freight and switch track facilities for its business within the city of Decatur. There was no such abuse of power shown as to justify the interference of the courts.

Appellees further contend that on the facts in this record the appellant is a mere lessee of the right of way of the Illinois Central between Maroa and Decatur Junction, and therefore cannot maintain condemnation proceedings. Counsel admit that this question is one of first impression in this State. The authorities cited in support of this contention are usually cases where one company has leased its franchise and all of its rights under its charter and the lessee has attempted to exercise the right of eminent domain granted by the charter of the lessor. (*Western Union Telegraph Co.* v. *Pennsylvania Railroad Co.* 195 U. S. 594; *Mayor* v. *Railroad Co.* 109 Mass. 115; 2 Elliott on Railroads,—2d ed.—sec. 958.) Those cases hold that while the legislature can authorize the transfer of this authority to the lessee, the lessee does not possess this power without clear legislative authority. (1 Lewis on Eminent Domain,—3d ed.—sec. 376.) In all of the cases relied upon by counsel for the appellees the only authority to condemn the lessees had was the authority that they obtained under the lease. Clearly, these cases are not in point on the question here. Appellant, by its charter, is granted full authority to condemn this property. Furthermore, it is not a lessee of the franchise rights and all charter powers of the Illinois Central Railroad Company. Between Maroa and Decatur Junction appellant has only a limited operating contract. Appellant is not attempting to condemn as a lessee, but in its own right under its charter.

Other objections were urged by counsel for appellees in the trial court but are not urged here. We are not, therefore, required to consider or decide them.

From the record before us we conclude that appellant was authorized to condemn the property in question for depot and switch track purposes. The judgment of the county court must therefore be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.        *Reversed and remanded.*