[No. 28584. Department One. December 4, 1941.]

THE STATE OF WASHINGTON, *on the Relation of Polson Logging Company, Plaintiff,* v. THE SUPERIOR COURT FOR GRAYS HARBOR COUNTY, *E. D. Hodge, Judge, et al., Respondents.*[1]

[1]Reported in 119 P. (2d) 694.

546

*L. B. Donley* and *Metzger, Blair & Gardner,* for relator.

*John T. Welsh, John D. Ehrhart, Gladys Phillips,* and *W. H. Abel,* for respondents.

MILLARD, J.—Under § 16, Art. I, of the state constitution, as amended, and implementing statute (Rem. Rev. Stat. (Sup.), § 936-1 [P. C. § 7658] *et seq.,* Laws of 1913, chapter 133, p. 412), M. & D. Timber Company, a domestic corporation engaged in general logging business, filed a petition in the superior court for Grays Harbor county to acquire, through the exercise of eminent domain, a private way of necessity for a period of three years for a truck logging road over the logging railroad grade and right of way of Polson Logging Company, a domestic corporation, located on the latter's land and on state owned land.

The purpose for which the private way of necessity is sought is to give to the petitioner access to certain timber in township 21 north, range 9 west, W. M. The right of way sought is a strip of land fifteen feet on either side of the center line of the entire ten mile length of a logging railroad grade constructed and maintained by Polson Logging Company across its own lands and across section 16, which is owned by the state of Washington.

A logging railroad built by Polson Logging Company in the area involved in this action was extended from time to time as logging conditions justified and was operated as a logging railroad continuously from 1913 to 1937 or 1938. The timber holdings of Polson Logging Company were exhausted in this area between 1937 and 1939, during which years Polson Logging Company removed the steel rails and ties from its logging railroad grade, and used the rails in construction of a logging railroad in another portion of its holdings.

Polson Logging Company applied October 26, 1939, to the state commissioner of public lands for renewal of its agreement with the state for easement over and across section 16. November 14, 1939, the chief

engineer in the office of the commissioner of public lands reported on that application for renewal of a right of way for a logging road over section 16 that the applicant had held that right of way for a term of fifteen years, since August 16, 1923, under a certificate granted by the state; that, as the certificate expired August 16, 1938, the new certificate should date therefrom; and that the applicant stated there were no improvements nor merchantable timber on the right of way and that the steel and ties were removed a few years previously but that there may be a possibility of removal of some odd lots of timber remaining in that area.

The right of way easement was granted for an additional period of ten years, expiring August 16, 1948, subject to forfeiture if use of the right of way for the purpose for which it was granted ceased for a period of two years.

In one letter, which is a part of the records of the state land commissioner in the matter of this application for renewal of agreement for easement across section 16, Polson Logging Company informed the commissioner that the company had completed its logging operations

". . . in this area and the steel and ties have been removed from the grade, although there is a chance that they may use this road for the removal of some odd lots of timber remaining in the area at some future date."

The letter dated October 27, 1939, from Polson Logging Company to the state land commissioner with other evidence in the record establishes the fact that Polson Logging Company had no intention of using the grade for a logging *railroad*, but that, possibly, at some distant date Polson Logging Company *might* have *use* for the *right of way for* a *truck road*. That letter reads as follows:

"Enclosed herewith is the application for right of way over state lands which was formerly held by this company for a logging R. R., prior to the completion of its logging in this locality.

"As the writer stated yesterday the steel and ties were removed a few years back and the line abandoned, but we now feel that there may be a possibility the company at some time may have use for this grade as a truck road for removing some small odd lots of their timber yet remaining in this section."

In 1939, A. M. Abel, to whose rights M. & D. Timber Company succeeded, obtained written permission from Polson Logging Company to transport by truck over and across a portion of the railroad grade involved herein the timber from his lands, which license was limited to a period of three years expiring February 17, 1942.

M. & D. Timber Company purchased certain other land, known as the Aberdeen Timber Company tract, in township 21. Polson Logging Company granted to M. & D. Timber Company April 9, 1941, permission to transport the timber from that tract over Polson Logging Company's railroad grade, which permission expired June 1, 1941. Subsequent to April 9, 1941, M. & D. Timber Company acquired from Milwaukee Land Company and from the forestry service of the United States certain other timber lands in township 21.

The purpose of the condemnation sought is to give to M. & D. Timber Company the right to transport by truck timber from all of its tracks over the railroad grade of Polson Logging Company from its terminus in section 11, township 21 north, range 9 west, to its intersection with the Olympic highway (state road No. 9) in section 35 of the same township. In addition petitioner seeks to condemn an area of eighty-six one-hundredths (.86) of an acre abutting upon that right

of way for the purpose of maintaining thereon an office, repair shop, and other structures. Polson Logging Company owns all of the lands and premises over which the private way of necessity is sought with the exception of section 16, which is owned by the state.

Polson Logging Company pleaded as affirmative defenses that the greater portion of the area sought to be condemned is a railroad grade and structures built for and adapted to railroad purposes; that there is a feasible way to remove the timber of petitioner by connection with the county road in section 25, township 21 north, range 9 west; and that the east fork of the Humptulips river is available for driving logs from the area involved. Polson Logging Company also pleaded that the petitioner was estopped from acquisition of right of way, as under a written agreement between the parties the petitioner was granted for a period ending February 17, 1942, a right to transport timber over the route involved herein.

The trial court expressed the opinion that Polson Logging Company had abandoned the use of its right of way as a railroad right of way; that

" . . . there is not the remotest possibility or probability of the company replacing the rails on the property sought to be condemned for a period of three years;"

and made findings of fact, which are summarized as follows:

The route adopted by petitioner's board of directors is a reasonable and proper way of necessity. There is no other available or reasonably practical route over or through which to reach petitioner's timber lands. For a number of years last past, petitioner maintained and operated, under a contract with Polson Logging Company which expires February 17, 1942, a grade over and upon which Polson Logging Company main-

tained for a time a logging railroad (the rails and ties of which Polson Logging Company removed), and the grade was surfaced and graded by petitioner M. & D. Timber Company so as to be usable as a *truck logging road,* for which purpose it has been used by petitioner in the transportation of timber under the above-mentioned contract. The extension of this easement right for the term of three years is necessary to, and required by, petitioner M. & D. Timber Company in order that the remaining timber on petitioner's lands may be completely removed. Under the contract which expires February 17, 1942, petitioner has maintained an office, repair shop, gasoline storage tank, and living quarters on an area of approximately eighty-six one hundredths of an acre immediately adjacent to the way of necessity, the use of which site is necessary and required in order that petitioner may use and enjoy, as a part thereof, the easement sought to be condemned. The alternative routes claimed by Polson Logging Company to exist are not available to petitioner; but if either of the suggested routes could be made available it would be at prohibitive cost having regard to the amount of timber and timber products, respecting which petitioner seeks to acquire by this proceeding a private way of necessity. The court further found:

"That the route selected by petitioner herein, which is hereby approved by the court, consists in great part of an old railroad grade, or grades, from which the rails and ties were removed several years ago, and respecting which the respondent has no intention to use as a railroad, either at the present time, or during the period for which petitioner seeks to use said route. Such timber as respondent owns or controls, tributary to said route is small in amount and value, and would not justify the construction of a railroad thereon, and is so situate that such timber could be removed more practically by logging trucks than by railroad.

"In respect to the use of said route, right of way, logging road and truck road, it is feasible that there be a joint use thereof by petitioner and respondent, and the right is hereby reserved unto respondent to haul and transport by motor truck such timber and timber products as it desires to transport thereover during the period of petitioner's use thereof acquired in this proceeding.

"That the use which petitioner intends to make of this right of way as a private way of necessity is hereby declared to be, and the same is, a public benefit, and the public welfare is thereby served."

The trial court entered an order adjudging petitioner M. & D. Timber Company was entitled to condemn and appropriate the above-described private way of necessity for the purpose of constructing and operating thereon a logging road and truck road, and as an office and repair shop in connection therewith and incidental thereto, for the removal therefrom of timber products located upon lands described; and

" . . . that the cause be set down for trial for the assessment of damages for the taking, damaging or injuriously affecting said described property of respondent, over and upon which said logging road and truck road is to be used by petitioner, and to ascertain, determine and assess the damages and compensation to be made in money by petitioner, irrespective of any benefits from any improvements proposed by petitioner, to the respondent for the taking, damaging, or injuriously affecting respondent's said land and property."

The cause is before us on certiorari to review the order of necessity entered in the eminent domain proceeding.

In the condemnation proceeding, M. & D. Timber Company sought to acquire a private way of necessity, thirty feet wide and approximately ten miles long, extending from the Olympic highway in section 35, township 21, to the westerly line of section 12 in town-

ship 21, traversing in its course the southwest quarter, the northwest quarter and the northeast quarter in section 16, township 21. Section 16 is public land of this state. The only interest relator has in section 16 is an easement or right of way across that section granted by the state through the state land commissioner under the provisions of Rem. Rev. Stat., §§ 7797-83, 7797-84 [P. C. §§ 6334-93, 6334-94] (Laws of 1927, chapter 255, p. 468). The easement is for a period of ten years, expiring August 16, 1948, and is subject to forfeiture if for a period of two years the grantee ceases to use the right of way for the purpose for which it was granted.

Counsel for relator contend that the order under which M. & D. Timber Company "is entitled to condemn and appropriate" state lands as an integral part of a continuous way of necessity to afford means of ingress and egress to and from M. & D. Timber Company's timber, is beyond the jurisdiction of the superior court, since the state of Washington is a necessary party to any proceeding to condemn state lands; and that the state was not joined as a party defendant nor served with notice or any form of process as required by the statute (Rem. Rev. Stat., § 923), which provides that, in all condemnation proceedings instituted for the purpose of appropriating any land owned by the state or in which it has an interest, service of process shall be made upon the commissioner of public lands.

It is argued that the court was without jurisdiction to enter such an order as the one in the case at bar, even if the state had been joined as a party defendant, served with process, and had appeared in the action, because there is no power to condemn state lands for a private way of necessity. Counsel for relator further insist that no part of or interest in relator's easement over section 16 (state owned land) may be condemned

and taken by M. & D. Timber Company; that, under the exclusive method (Rem. Rev. Stat., §§ 7797-83, 7797-84; Laws of 1927, chapter 255, p. 468), provided by the legislature for acquiring right of way over state lands, relator acquired its easement over section 16, which easement and rights are not subject to appropriation by another by the power of eminent domain. In support of this position, counsel for relator cite *State ex rel. Mason County Power Co. v. Superior Court,* 99 Wash. 496, 169 Pac. 994.

It is true that there is an absence of statutory authority to condemn state lands for private ways of necessity for the logging of timber lands and the removal of timber therefrom, and that no such power may be implied from any existing statute.

"The power to condemn the property of the state must be clearly granted and will not be implied." *State ex rel. Mason County Power Co. v. Superior Court,* 102 Wash. 291, 173 Pac. 19.

By Laws of 1927, chapter 255, p. 468, § 83 (Rem. Rev. Stat., § 7797-83) the legislature provided the means for securing a right of way over state lands which obviate necessity of resort to eminent domain proceedings; and the statutory method provided for securing a right of way over state lands is exclusive.

The pertinent statute (Rem. Rev. Stat. (Sup.), §§ 936-1 to 936-3 [P. C. §§ 7658 to 7670], inclusive, Laws of 1913, chapter 133, p. 412) reads as follows:

"Section 1. An owner, or one entitled to the beneficial use, of land which is so situate with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity or to construct and maintain any drain, flume or ditch, on, across, over or through the land of such other, for agricultural, domestic or sanitary purposes, may condemn and take lands of such other sufficient in area for the construction and maintenance of such private way of necessity, or for the construction

and maintenance of such drain, flume or ditch, as the case may be. The term 'private way of necessity,' as used in this act, shall mean and include a right of way on, across, over or through the land of another for means of ingress and egress, and the construction and maintenance thereon of roads, logging roads, flumes, canals, ditches, tunnels, tramways and other structures upon, over and through which timber, stone, minerals or other valuable materials and products may be transported and carried.

"Sec. 2. The procedure for the condemnation of land for a private way of necessity or for drains, flumes or ditches under the provisions of this act shall be the same as that provided for the condemnation of private property by railroad companies, but no private property shall be taken or damaged until the compensation to be made therefor shall have been ascertained and paid as provided in the case of condemnation by railroad companies.

"Sec. 3. Any person or corporation availing themselves of the provisions of this act for the purpose of acquiring a right-of-way for a logging road, as a condition precedent, [shall] contract and agree to carry and convey over such roads to either termini thereof any of the timber or other produce of the lands through which such right is acquired at any and all times, so long as said road is maintained and operated, and at reasonable prices; and a failure so to do shall terminate such right-of-way. The reasonableness of the rate shall be subject to determination by the public service commission."

▮▮▮ That an easement of right of way is "land" and is subject to condemnation under statute which authorizes condemnation of lands or of any interest or estate, is supported by a multitude of authorities. See *State ex rel. Burrows v. Superior Court*, 48 Wash. 277, 93 Pac. 423; *United States v. Welch*, 217 U. S. 333, 54 L. Ed. 787, 30 S. Ct. 527; *Swann v. Washington-Southern R. Co.*, 108 Va. 282, 61 S. E. 750; *Davis v. Board of Education*, 166 Md. 118, 170 Atl. 590; 2 Lewis, Eminent Domain (3rd Ed.) 743, § 412; 20 C. J. 593.

The state's grant for a period of ten years to relator of right of way over section 16 for a logging road is an easement and is "land," so that the power to condemn land is also power to condemn an easement in land.

Under the general eminent domain statute granting railway companies the right to condemn, "land, real estate or premises," we held in *State ex rel. Trimble v. Superior Court*, 31 Wash. 445, 72 Pac. 89, included an executory contract for the purchase from the state of tide lands; and that it was not necessary to make the state a party, but that the interest of the purchaser under such executory contract was subject to condemnation. We said:

"But this court has held that the interest of the state in tide lands cannot be taken under the power of eminent domain granted to railway corporations by the above-mentioned statute, for the reason that the law contemplates the taking of private and not public property, unless the right to take the latter is specifically conferred by law. *Seattle & Montana Ry. Co. v. State*, 7 Wash. 150 (34 Pac. 551, 22 L. R. A. 217, 38 Am. St. Rep. 866). And, such being the law in this state, the learned counsel for the relators contend that the tide lands in question are not subject to condemnation and appropriation by the railroad company, because they are still the property of the state, and the relators have no estate, either legal or equitable, therein; and they cite several authorities holding, in effect, that in law the vendee in a mere executory contract for the sale of land obtains no real property or interest in real property; that the relations between the parties to the contract are wholly personal; that the vendee's right is a mere thing in action, and that it is only when the vendee performs, or offers to perform, all the acts necessary to entitle him to a deed, that he has an equitable title and may compel a conveyance . . . We have no doubt that, as between the parties to a contract for the sale and purchase of land, the vendee therein named does not become the full equitable owner until he performs or offers to perform all the

acts necessary to entitle him to a conveyance of the land and to a specific performance of the contract in a court of equity; but it does not necessarily follow that a vendee in such a contract has no interest or estate whatever in the land covered by the agreement, which may not be controlled or divested by law. In fact, as we shall hereafter see, there are interests in real property, less than estates in fee simple, which may be taken for public uses by authority of the sovereign power. And, it must be borne in mind that the respondent corporation is not seeking to appropriate the interest of the state in the tide lands described in the petition for condemnation, or the interest of any person or persons therein other than the state's vendee and the relators herein. It simply seeks, as we have already said, to appropriate, condemn, and acquire the entire interest of the relators in said tide lands, namely, their equitable ownership thereof, and their entire interest in said agreement with the state of Washington for the sale and conveyance thereof, . . . And the first question, therefore, to be determined is whether the interest sought to be appropriated by the respondent is fairly included in the grant to corporations organized for the construction of railways of the power of eminent domain. It is contended on behalf of the relators that it is not, for the alleged reason that the power to condemn and appropriate such interest is not conferred upon the respondent corporation either expressly or by necessary implication, and therefore cannot be exercised by it for the purpose of depriving the relators of property which is a mere chose in action, and not 'land, real estate or premises' in contemplation of our statute. . . . It is true that the relators have a vested right to the possession and use of this land, as stated by counsel, but we think it is not true that such vested right may not be molested 'by the law of eminent domain.' The interest of the relators is, to say the least, an interest in land, and as such may be taken for a public use by condemnation, upon payment of just compensation therefor."

In commenting on *State ex rel. Trimble v. Superior*

*Court, supra,* in *State ex rel. Northern Pac. R. Co. v. Superior Court,* 136 Wash. 87, 238 Pac. 985, we said:

"The relator held a contract of purchase from the state for certain tide lands, and the suit was brought to condemn the interest thereby acquired. It was objected that the state had an interest in the property, that this interest had not been acquired and could not be acquired against the will of the state. We held that this did not constitute a defense to the proceedings, resting the holding on the ground

" ' . . . that the relators must be regarded as the real owners of the lots in question, subject only to the right of re-entry and forfeiture on the part of the state in the event of a failure on their part, or that of their successors or assigns, to pay the balance of the purchase price according to the terms of the state's contract.' "

The eminent domain statute of Oregon authorizes certain classes of public service corporations to condemn land for their use. In *Pacific P. Telegraph-Cable Co. v. Oregon & C. R. Co.,* 163 Fed. 967, it was held that the word "land" in that statute was comprehensive and included any interest in land, and under it an easement or right of way could be condemned. The court said:

"When, therefore, the statute gives authority for taking land, it carries with it by necessary implication the authority to take any less interest or estate in the land in the same way and to like effect as the land itself may be taken."

*State ex rel. Mason County Power Co. v. Superior Court,* 99 Wash. 496, 169 Pac. 994, 102 Wash. 291, 173 Pac. 19; cited by relator to sustain its position that, having acquired the easement over section 16 by the exclusive statutory method provided therefor, the easement is not subject to appropriation by another by the power of eminent domain, is distinguishable from the case at bar. In the case cited, the easement which was

the subject of condemnation was acquired for public purposes. The condemnor sought to acquire that same easement for a like public use, which, of course, is contrary to the rule that property acquired for public use can not be condemned for the same public use.

In the case at bar, relator, a private corporation, acquired a private way of necessity for a logging road (either by railroad or by trucks) over state land (section 16), which road connects with relator's logging road on its own land. Relator's easement over section 16 was renewed by the state for a ten-year period on relator's representation that use of the right of way for logging by railroad had been abandoned but that there might be a possibility that relator at some time might have use for the grade "as a truck road for removing some small odd lots of their timber yet remaining in this section." The court found—the evidence amply sustains that finding—that relator had abandoned the use of the grade on its own land and on state owned section 16 for a logging railroad; that relator had removed the rails and ties from that grade and was using those steel rails in another portion of relator's holdings; and that relator has no intention of constructing a railroad on and over that grade.

Relator now insists that it does not intend to use the road for a truck road but intends some time in the future, dependent upon the contingency of acquisition of government timber, to use the right of way for a logging railroad. There is no claim that it will be used within the immediate future.

It is clear that the use that M. & D. Timber Company will make of relator's right of way for the next three years at least will not differ from the use to which relator puts that easement, and that M. & D. Timber Company's use will not in any wise impair the use of the easement by relator; hence, there is no reason why

the easement should not be subject to the right to condemnation for a joint use (*State ex rel. Colyn v. Superior Court*, 132 Wash. 411, 232 Pac. 282) upon payment of just compensation therefor.

Counsel for relator contend that, disregarding the argument respecting state owned section 16 and the unbridged gap which the necessary elimination of that section leaves in petitioner's main line, petitioner did not sustain the burden of proof imposed upon it of establishing a reasonable necessity, or any necessity, for taking the particular route selected over lands of relator.

It is argued, in effect, that the court was not mindful that the reasonable necessity authorizing such taking is to be determined by the court in the light of the relief which the statute (Rem. Rev. Stat. (Sup.), § 936-1, *et seq.*) is designed to afford, upon a view of the entire situation and with particular consideration to the impairment and infringement of the condemnee's rights which will be consequent upon the proposed taking.

The argument is reiterated by counsel for relator that by the terms used in the statute (Rem. Rev. Stat., §§ 936-1 *et seq.*), which authorizes, in cases of necessity falling within its terms, one owner to condemn and take lands of another "sufficient in area for the construction and maintenance of such private way of necessity," the statute contemplates that the construction required to make the way usable will be done by the condemnor; that it does not contemplate, much less authorize, the taking of an improved way when such taking will prevent the use of the improved way in the manner for which it was constructed, at least in the absence of a showing that there are no other lands available on or over which the condemnor could construct its own road; and that, in the absence of agree-

ment between the parties, the condemnor must take the rights which he seeks to appropriate absolutely and unconditionally and he must make full compensation for what he takes.

■ M. & D. Timber Company's board of directors, prior to commencement of the condemnation proceeding, by resolution adopted the route sought to be acquired. The selection of the route by M. & D. Timber Company makes a *prima facie* case of necessity for taking such specific property; and in the absence of evidence of bad faith, oppression, or abuse of power, evidence that another route is feasible is not enough to show that the selection of the route sought by the condemnor shows such bad faith, oppression, or abuse of power. In the absence of proof—there is none—of fraud, oppression, or bad faith, the selection of the route by the logging company, as made in the case at bar by petitioner's board of directors, will be upheld. In *State ex rel. Grays Harbor Logging Co. v. Superior Court,* 82 Wash. 503, 506, 144 Pac. 722, we said:

"The necessity being first shown, there seems no good reason why the rule of that case should not apply when the purpose of the condemnation is to acquire a private way of necessity. The reasons which support the rule in the one case would also seem to support it in the other. The respondents claim that that case is inapplicable, because there the question was the change of route over the same owner's land, while here the proposed different route is over the land of an owner not a party to the proceeding. It will be assumed, but not decided, that the rule is applicable when the proposed change of route would cross the land of a third party. The question then arises, should the evidence offered and rejected have been received? The evidence offered went no further than that the route over the north half of Sec. 31 was feasible, and that the road could be constructed there at a reasonable cost. This fell short of meeting the requirements of the rule. In order to justify the court in ordering

the change of location of the proposed road, it was necessary to show, not only another route which was practicable and that the road could be constructed thereon at a reasonable cost, but it was necessary to go further and show by clear and convincing evidence that in the selection of the route sought to be condemned there was bad faith, oppression, or an abuse of power. The evidence offered does not go to the extent of showing that the route selected by the condemnor causes unnecessary damage to the relators' property, and that the route over Sec. 31 would cause much less damage to that property than would the route selected cause to the relators' property."

The general rule is that the condemnor has a right to select the route it desires to acquire for a right of way, with which selection the courts will not interfere, except in case of a clear showing of bad faith on the part of the condemnor in making such selection.

Some of our cases are cited in support of the text at page 561 of 86 A. L. R. to the effect that, under Laws of 1913, chapter 133, p. 412,

". . . the selection of a route by a logging company makes a prima facie case of the necessity for taking the specific land sought to be condemned, and that the landowner cannot prevent the condemnation of his land for a logging road merely by showing that another route is feasible; but that, in order to do so, he must also show that, in the selection of the route sought to be condemned, there was bad faith, oppression, or an abuse of power."

In *Seattle & M. R. Co. v. Bellingham Bay & E. R. Co.*, 29 Wash. 491, 69 Pac. 1107, 92 Am. St. 907, we cited with approval the following language from *Mobile & Girard R. Co. v. Alabama Midland R. Co.*, 87 Ala. 507, 6 So. 404:

" 'A necessity, such as authorizes one railroad corporation to condemn a part of the right of way of another, does not mean an absolute and unconditional necessity as determined by physical causes, but a rea-

sonable necessity under the circumstances of the particular case, dependent upon the practicability of another route, considered in connection with the relative cost to one and probable injury to the other; and the right of condemnation is not made out, unless the petitioning company shows that the cost of acquiring and constructing its road on any other route clearly outweighs the consequent damage which may result to the older company, not including the question of competition for the business of a manufacturing (or other large) establishment on the line of the proposed route.' "

See, also *State ex rel. Clear Lake L. R. Co. v. Superior Court*, 83 Wash. 445, 145 Pac. 421, 148 Pac. 7.

■ The trial court was of the opinion, which is amply sustained by the evidence, that relator abandoned the use of the right of way for a logging railroad; that there was not the remotest probability that relator would replace the rails on the property sought to be condemned for a period of three years; and that the route selected by respondent is a feasible, reasonable, and practical route, in fact, the only route for ingress and egress to properties owned by M. & D. Timber. Company; and that joint use for three years with relator of the right of way in question for a truck road should be granted.

The necessity for the route sought is established by the evidence. Relator suggested two routes in lieu of the one selected by M. & D. Timber Company, each of which suggested routes the trial court found was not feasible, but that both were impossible and too expensive.

The first route suggested was that of a public road which extends to a point in section 24, township 21, and thence by the improvement of a trail a distance of approximately three miles from the northerly end of that public road to lot 11, section 2, township 21, and that the west fork of the Humptulips river is also

available to petitioner for the purpose of floating out such timber as is on the lands mentioned.

The evidence is to the effect that the placing of logs in west Humptulips river on natural freshets has never been done; and that, in the days of river logging, which is a thing of the past, west Humptulips river was not so used, with the exception that, in the southwest portion of the township, below Furlow creek, some years ago logs were placed in the river and carried down stream on artificial freshets. Above Furlow creek, a distance of some miles, no logging by that means was ever done. The river is non-navigable. Its bed and banks are within the township and are wholly controlled by Polson Logging Company, with the exception of section 16, which is owned by the state.

M. & D. Timber Company has no access to east fork or west fork of the river. As it is not a boom or a driving company, it has no right on the river at all, and it would be necessary to institute actions to acquire right to create artificial freshets. Actually, as the court found, the west fork of the river is not a route available to M. & D. Timber Company. The east fork dam and the west fork dam, which were built between 1902 and 1906 in the west Humptulips river, ceased to be used and were destroyed in 1926. The cribs to protect the banks against the ravages of artificial freshets and logs borne thereon have disappeared during the past fourteen years. The west fork has never been used to float logs. The suggested route down east fork would require the hauling of logs over a ridge at an excessive cost. The expense and delay of either suggested route justify its rejection in favor of the route selected by the M. & D. Timber Company.

The other suggested route is across section 14 to the northern terminus of the old Stockwell road by the dam in section 24, thence down the Stockwell road.

The court's finding that this is not a feasible route is amply sustained by the evidence. This road was built about forty years ago as a light road to haul supplies by wagon and has not been used for anything else. The man who built the road testified it was not feasible as a logging road. The last seven or eight miles of the road ceased to be used as such even to haul supplies by wagon. Between 1924 and 1926, when the dams were destroyed, there was no occasion for use of the road. It has not been used for any purpose during the last decade, during which time it has been fenced off by a cable across the road, placed there by relator, and immediately adjoining is road sign bearing the name of relator logging company with the admonition "Private Property, Keep Out."

There is no way of getting to the road. The ridge which extends across section 14 easterly and westerly is broken by canyons; thence down to sections 24 and 25, and along the Stockwell road it is a series of canyons; logs could not be hauled up the grades, which are very steep. It would be necessary to construct many bridges, which would make the cost of such a road prohibitive. The Stockwell road down east fork was built too light, and the grades were such that logs could not be hauled over it.

If the route selected by petitioner M. & D. Timber Company is without material detriment to Polson Logging Company, it should be approved, as necessity for the route sought is established by the evidence. Petitioner does not seek an exclusive easement. It seeks joint use with relator for a period of three years of the old logging railroad grade, now a truck road, for transportation of logs by trucks. Its use will be available to relator or to any one to whom the relator may grant permission. Its use is not incompatible with use by others. *State ex rel. Colyn v. Superior Court*, 132

Wash. 411, 232 Pac. 282, is sustaining authority for joint use of the road grade involved herein.

In the case cited, the private way of necessity desired was a small strip of land across a portion of a forty acre tract which was at the time in use by the condemnees as a private road leading from the main traveled county road and giving access to the lands of the condemnors and condemnees. The road was fenced and graded, and crossed a river over a bridge. The trial court was of the opinion that a private way of necessity could not be condemned over an existing private way devoted to the same purpose and a partnership thereby forced upon the condemnees. In reversing the judgment of the trial court denying an order of necessity, we said:

"The use of a private way of necessity differs from a public road only in the extent of the use. The right over a public road is in the nature of an easement and is enjoyed by all. The right over a private way of necessity is restricted, but there is no reason why it should not be subject to the right to condemn a joint use under reasonable terms and conditions for the maintenance and improvement of the road. We have heretofore held that, since the statute does not in express terms specify the nature and extent of the rights that may be condemned, it is not necessary for a city in securing a right of way for an electric power line to condemn the entire fee, but may condemn an easement which reasonably satisfies its needs. *Seattle v. Faussett,* 123 Wash. 613, 212 Pac. 1085.

"The use of this road for a private way of necessity does not differ from the use it is already put to by respondents, and it will in nowise destroy or impair the use of the road by respondents."

While relator now disclaims any intention to use the route for a truck road, the easement agreement it made with petitioner's predecessor in interest, to which agreement relator referred in its answer in the con-

demnation proceeding, recognizes that a joint use can be made of the right of way. In that agreement, relator reserved the right to enter in and upon the road grades, as the same then were or after the same had been improved by the other party to that agreement, and make such reasonable use thereof as might be necessary or convenient from time to time as relator might direct. Another provision of that agreement was to the effect that the permission given to petitioner's predecessor in interest was not exclusive, and relator reserved the right to grant to others from time to time the privilege of hauling logs or other commodities, or to make other use of the railroad grades. There was another provision of that agreement that, in the event the use of the roads or grades was granted to others, such others would be required to bear a proportionate share of cost of an adequate dispatching service such as might be necessary to handle the traffic over the roads or grades.

Petitioner proved necessity for the route sought. The route selected may be used jointly by petitioner with relator without material detriment to the latter. The way of necessity sought by petitioner over and on the right of way of relator is subject to condemnation for a joint use. *State ex rel. Colyn v. Superior Court,* 132 Wash. 411, 232 Pac. 282. The mere possibility that relator may at some future time desire to use the grade for a logging railroad—the evidence is to the contrary— does not exempt that right of way from condemnation. 20 C. J. 601. Reasonable expectation of future needs and a bona fide intention of using it for such purposes within a reasonable time are required to protect the property from condemnation.

"A future use that rests upon conjecture or a contingency should yield to the more immediate necessity

of the company seeking condemnation." · 18 Am. Jur. 720.

■ Under the terms of its agreement with Polson Logging Company, M. & D. Timber Company has· an easement over the route in question for a period expiring February 17, 1942. M. & D. Timber Company is not estopped from acquisition by condemnation of a way of necessity for logging road over the route of which it now has an easement under that contract. A private way of necessity for a logging road may be condemned, although the petitioner already has a lease thereof, for as long a term as may be required. The right to condemn may be exercised under the constitution (Art. I, § 16, state constitution, as amended) and the statute (Laws of 1913, chapter 133), without reference to contract rights. *State ex rel. Preston Mill Co. v. Superior Court*, 91 Wash. 249, 157 Pac. 689; *State ex rel. Henry v. Superior Court*, 155 Wash. 370, 284 Pac. 788; *Chicago etc. R. Co. v. Illinois Cent. R. Co.*, 113 Ill. 156; *Terre Haute & P. R. Co. v. Robbins*, 247 Ill. 376, 93 N. E. 398.

■ In its petition for condemnation of a private way of necessity, M. & D. Timber Company stipulated that, during the period of existence of the private way of necessity, it would gravel and maintain in reasonably good condition the grade of the private way of necessity. In its order of necessity, the court made the following finding of fact:

"In respect to the use of said route, right of way, logging road and truck road, it is feasible that there be a joint use thereof by petitioner and respondent, and the right is hereby reserved unto respondent to haul and transport by motor truck such timber and timber products as it desires to transport thereover during the period of petitioner's use thereof acquired in this proceeding."

Counsel for relator argue that the offer as to main-

tenance made in the pleading, and the concession as to joint use incorporated into the foregoing finding (which were not accepted by relator), were made for the purpose of minimizing the just compensation which might be awarded to relator.

Counsel for relator criticize our opinion in *State ex rel. Colyn v. Superior Court, supra,* particularly the following language of that opinion:

"The trial court should determine all the conditions and terms of maintenance and improvement required of both petitioners and respondents."

Our remand of that cause, with directions that, as part of the order of necessity, the trial court should make a determination as quoted, was subject to the constitutional provision (§ 16, Art. I, state constitution, as amended) that

" . . . no right of way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, . . . "

The condemnee cannot be compelled to accept a mere offer by the condemnor to allow the former certain rights and privileges or to do some act in his favor in payment or reduction of compensation. 20 C. J. 768. The damages occasioned by the taking are estimated as of the time of taking. In the absence of agreement between the parties, the condemnor must take the rights which he seeks to appropriate absolutely and unconditionally, and he must make full compensation for what he takes. An unaccepted promise to do something in the future in case certain emergencies arise cannot affect the character or the extent of the rights acquired and cannot be considered as affecting the amount of damages to be awarded. When property is acquired by virtue of the power of

eminent domain, the compensation of the owner is to be estimated by the actual legal rights acquired by the condemnor and not by the use that he may make of the right. Compensation must, of course, be reckoned from the standpoint of what the property owner loses by having his property taken, not by the benefit which the property may be to the condemnor. See 20 C. J. 768, 776.

■ Counsel for relator argue that, under the constitution of this state, private property cannot be condemned for any private use other than a way of necessity; therefore, the trial court erred in entering an order of necessity authorizing condemnation of site for office and repair shop.

The eighty-six one hundredths of an acre on which the office, gasoline storage tank, and small repair shop are located immediately adjacent to the right of way sought by M. & D. Timber Company is, as the trial court found, necessary and required in order that M. & D. Timber Company may maintain, use, and enjoy the easement sought to be condemned.

The statute (Rem. Rev. Stat., § 936-1 *et seq.*) provides that one may condemn or take lands of such other sufficient in area for the construction and maintenance of a private way of necessity. It follows that everything that is reasonable, incidental, and necessary to the use of that way of necessity comes within the language of the statute. It is on the same theory that a depot is incidental to the operation of a railroad, and is in harmony with the rule that, while ordinarily a condemning corporation cannot condemn additional land that is not contiguous to land already acquired for its purposes, it may be authorized to condemn contiguous or adjacent land necessary to enable it to carry out its purposes. 20 C. J. 638.

Under the statute (Rem. Rev. Stat., § 936-1 *et seq.*) authorizing the condemnation of sufficient lands for

the construction and maintenance of a private way of necessity, it would be indeed a strained construction that the legislature did not contemplate including such adjacent area to the right of way as was reasonably necessary not only for the construction, but for the maintenance, of such private way. Clearly, the site for the watchman's house, repair shed, and office is necessary to the maintenance of the right of way.

The easement sought by M. & D. Timber Company is for a period of three years, hence the order of necessity should be modified to provide for joint use by M. & D. Timber Company with Polson Logging Company of the easement in question for the period of three years from date such joint use becomes effective. The cause should be set down for trial for the assessment of damages in conformity to this opinion.

The order, as modified, is affirmed. The remittitur will go down forthwith.

ROBINSON, C. J., MAIN, STEINERT, and DRIVER, JJ., concur.